THE NORTH CAROLINA STATE BAR, PLAINTIFF v. STEPHEN L. BEAMAN, ATTORNEY, DEFENDANT

No. 8910NCSB1017

(Filed 4 December 1990)

**Attorneys at Law § 80 (NCI4th)— attorney's letter to former clients' bankruptcy attorney—conduct prejudicial to administration of justice—insufficient findings**

Findings by a Hearing Committee of the Disciplinary Hearing Commission of the State Bar were insufficient to support its conclusion that defendant attorney was guilty of "conduct prejudicial to the administration of justice" in violation of Rule 1.2(D) of the Rules of Professional Conduct by writing a letter to the attorney representing defendant's former clients in a bankruptcy proceeding in which he stated that he had filed a proof of claim for fees due from the bankrupts, that attorney-

client confidences do not apply when collection of a fee is involved, that the bankruptcy petition failed to mention a promissory note owed the bankrupts and their conveyance of two parcels of real estate to their daughter, and that "if we can reach some satisfactory agreement with respect to the handling of the balance due to us, then this matter may . . . be put to rest," where the Committee failed to determine whether defendant's letter constituted a threat, the nature of the threat, if any, and how defendant's conduct, by intent or effect, was prejudicial to the administration of justice.

**Am Jur 2d, Attorneys at Law § 60.**

**Attorneys at Law; fee collection practices as ground for disciplinary action. 91 ALR3d 583.**

APPEAL by defendant from Order of the Disciplinary Hearing Commission of the North Carolina State Bar entered 30 January 1989. Heard in the Court of Appeals 6 June 1990.

*Carolin D. Bakewell for plaintiff appellee.*

*Beaman and King, P.A., by Charlene Boykin King; Thomas and Farris, P.A., by Allen G. Thomas; and Burns, Day and Presnell, by Lacy M. Presnell, III, for defendant appellant.*

COZORT, Judge.

The North Carolina State Bar filed a complaint alleging that the defendant violated Rule 4 of the Rules of Professional Conduct of the North Carolina State Bar. The State Bar subsequently moved to amend its complaint to allege that the defendant also violated Rule 1.2(D) of the Rules of Professional Conduct. A Hearing Committee of the Disciplinary Hearing Commission (the Committee) found in substance that the defendant had committed the acts alleged in the complaint and concluded that the defendant violated Rule 1.2(D). The Hearing Committee's Order of Discipline publicly censured the defendant. The defendant appealed. Having reviewed the record and the briefs, we remand the case for further consideration by the Disciplinary Hearing Commission. The factual and procedural history pertinent to our disposition of the case follows.

In April 1985, defendant Beaman was consulted by Mr. and Mrs. Thomas L. Green regarding their financial difficulties. By the summer of 1986, Beaman concluded that it would be in the

best interest of the Greens to file a petition in bankruptcy. Apart from billing the Greens on a monthly basis for $2,125.59 in attorney's fees, Beaman had no contact with the Greens after approximately July 1986. In April 1987, Beaman learned that the Greens had initiated bankruptcy proceedings, through another attorney, in the United States Bankruptcy Court for the Eastern District of North Carolina. The Greens' bankruptcy petition listed Beaman as an unsecured creditor and the $2,125.59 in attorney's fees as a debt. Beaman filed a proof of claim. On 5 August 1987, Beaman sent a letter to Joseph T. Howell, the attorney representing the Greens in bankruptcy proceedings. That letter was worded as follows:

> As you know I have previously represented Mr. and Mrs. Green and have filed a Proof of Claim in their case for fees due us in the amount of $2,125.59.
>
> As you know, client confidences do not apply as between an attorney and a client when the collection of the fee is involved.
>
> In reviewing the petition of the Greens I fail to note any mention of a Promissory Note from Barbara Holt in the approximate amount of $22,000.00 payable at the rate of $522.50 per month, nor is there any reference to the transfer of a store building, warehouse, and cucumber station to Patty Green sometime in 1984, along with the tranfer [sic] of a lake lot on Lake Gaston to Patty Green. Patty Green is the daughter of Mr. and Mrs. Green.
>
> I have not publicly raised any of these questions at this point. If we can reach some satisfactory agreement with respect to the handling of the balance due to us, then this matter may, in fact, be put to rest.
>
> I look forward to hearing from you in the next several days.

On 29 August 1988, the State Bar filed a complaint against Beaman alleging, among other items, the following:

> 4. In 1986, Beaman undertook to represent Thomas and Ellen Green.
>
> 5. While representing the Greens, Beaman discussed the Greens' property and debts and advised them of the requirements for filing for bankruptcy.

**N.C. STATE BAR v. BEAMAN**

[100 N.C. App. 677 (1990)]

6. Thereafter, the Greens discharged Beaman as their attorney, and Beaman billed the Greens approximately $2,125.99 as his attorney fee.

7. In April 1987, the Greens, then represented by the law firm of Kirk, Gay & Kroeschell, filed for bankruptcy.

8. The Greens listed Beaman as a creditor in their bankruptcy petition.

9. Beaman was notified that he had been listed as a creditor in the Greens' bankruptcy petition.

10. Thereafter, on August 5, 1987, Beaman sent a letter to the Greens' attorney, requesting payment of his $2,125.59 attorney fee. A copy of the August 5, 1987 letter is attached hereto as exhibit A.

11. In the August 5, 1987 letter, Beaman stated that the Greens might have improperly omitted two financial transactions from their bankruptcy petition. Beaman then indicated "[i]f we can reach some satisfactory agreement with respect to the handling of the balance due to us, then this matter may . . . be put to rest."

12. Beaman did not adequately pursue other means of collecting his fee before writing the August 5, 1987 letter.

THEREFORE, Plaintiff alleges that Beaman's foregoing actions constitute grounds for discipline pursuant to N.C. Gen. Stat. Section 84-28(b)(2) in that:

(a) By threatening to reveal client confidences unless his attorney fee was paid, and by failing to adequately explore other means of collecting his fee, Beaman violated Rule 4.

Rule 4 provides:

(A) "Confidential information" refers to information protected by the attorney-client privilege under applicable law, and other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client. For the purposes of this rule, "client" refers to present and former clients.

(B) Except when permitted under Rule 4(C), a lawyer shall not knowingly:

(1) Reveal confidential information of his client.

(2) Use confidential information of his client to the disadvantage of the client.

(3) Use confidential information of his client for the advantage of himself or a third person, unless the client consents after full disclosure.

(C) A lawyer may reveal:

(1) Confidential information, the disclosure of which is impliedly authorized by the client as necessary to carry out the goals of the representation.

(2) Confidential information with the consent of the client or clients affected, but only after full disclosure to them.

(3) Confidential information when permitted under the Rules of Professional Conduct or required by law or court order.

(4) Confidential information concerning the intention of his client to commit a crime, and the information necessary to prevent the crime.

(5) Confidential information to the extent the lawyer reasonably believes necessary to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client; to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved; or to respond to allegations in any proceeding concerning the lawyer's representation of the client.

Beaman answered, denying "that the letter of August 5, 1987 . . . requested payment of Beaman's attorney fee." He answered further that he

reviewed the notes that had been taken during [his] last meeting with Mrs. Green concerning assets and liabilities, and compared said notes to the assets and liabilities listed in the [Greens' bankruptcy] petition.

6. In comparing said notes and petition, Beaman noted that there was a promissory note of the Greens from Barbara Holt . . . . He further noted that the Greens had transferred two parcels of real estate to their daughter . . . .

\* \* \* \*

. . . He believed that further investigation into the affairs of the debtors was necessary and prudent in the role of an unsecured creditor. Such an investigation might well lead to the recovery of additional assets, which would in turn increase the size of the estate that the trustee had available for distribution to all creditors including him, so that the payment to him would be enhanced. Such action would be prudent and proper if viewed solely as a creditor. However, he had also previously acted as debtors' counsel and had received confidential information from the debtors, including the information described above.

\* \* \* \*

11. Beaman believed that the prudent course of action, considering all of the circumstances, would be to simply write the debtors' attorney, inform him that certain issues were unresolved in Beaman's mind, and to suggest that if these questions were not resolved to Beaman's satisfaction, that further legal proceedings might follow.

After the defendant answered the complaint, the plaintiff filed a motion to amend the complaint, stating: "That the proposed amendment does not attempt to charge Beaman with additional acts of alleged misconduct, but simply cites an additional provision of the Rules of Professional Conduct which Plaintiff alleges Beaman's conduct may have violated." The proposed amendment alleged that defendant's conduct also violated Rule 1.2(D), which provides that it is professional misconduct for a lawyer to "[e]ngage in conduct that is prejudicial to the administration of justice."

After a hearing on 30 December 1988, the Committee found that the defendant violated Rule 1.2(D). In announcing the decision of the Committee, the Chairman stated that the allegations that defendant violated Rule 4 had "not been proven by clear and cogent evidence"; the order made no reference to Rule 4. In an Order of Discipline dated 30 January 1989, the Committee made the following pertinent findings of fact and conclusion of law:

3. Between the spring of 1985 and approximately August 1986, the Defendant represented Thomas and Ellen Green.

4. During his representation of the Greens, the Defendant discussed the Greens' financial problems, including their assets and liabilities.

5. During his representation of the Greens, the Defendant learned that the Greens were the holders of a promissory note executed by one Barbara Holt and that the Greens had conveyed certain property, including a cucumber station and a lake lot, to their daughter, Patty Green, in 1984.

6. After a final conference with the Defendant in approximately July 1986, the Greens failed to return for any further appointments, and the Defendant concluded that they no longer wished him to represent them by August, 1986.

7. As of their last conference in July, 1986, the Defendant believed that the Greens owed him $2,125.59 in attorneys' fees.

8. Between August, 1986 and April, 1987, the Defendant took no action to attempt to collect the attorneys' fees owed to him, other than sending monthly bills to the Greens.

9. On April 5, 1987, the Greens, then represented by Joseph T. Howell, filed a petition in bankruptcy.

10. The Greens' petition in bankruptcy listed the Defendant as a creditor and listed the $2,125.59 in attorneys' fees as a disputed debt.

11. The Defendant was aware that he had been listed as a creditor in the Greens' bankruptcy petition and filed a proof of claim after April 5, 1987.

12. On August 5, 1987, the Defendant sent a letter to the Greens' attorney . . . .

[The text of the letter is quoted above.]

13. The Defendant did not investigate the Greens' transactions regarding the Holt note or the Patty Green matters other than writing the August 5, 1987 letter.

14. The Defendant has an excellent personal and professional reputation in his community and has not been the subject of prior discipline by the N.C. State Bar.

Based upon the foregoing Findings of Fact, the Committee makes the following Conclusion of Law:

(a) By sending the above threatening letter to the Greens' attorney, the Defendant engaged in conduct prejudicial to the administration of justice, and thereby violated Rule 1.2(D) of the Rules of Professional Conduct.

On approximately 21 February 1989, the defendant filed a "motion for reconsideration" of the conclusion of law and Order of Discipline. After a hearing on 14 April 1989, the Committee deemed the defendant's motion to be one made pursuant to Rule 60(b)(6) of the North Carolina Rules of Civil Procedure, and the Committee denied that motion. The defendant appealed, assigning error both to the Order of Discipline and the Order denying his Rule 60(b)(6) motion.

Turning to the issues on appeal, we note initially that no objection to the State Bar's motion to amend its complaint to include Beaman's alleged violation of Rule 1.2(D) was made and that his alleged violation of this rule was argued before the Committee. Accordingly, consent to the amendment is presumed and the issue will be treated as being properly pled. *Harris v. Bridges*, 59 N.C. App. 195, 197-98, 296 S.E.2d 299, 300-01 (1982). We note further that in his brief the defendant does not discuss the denial of his Rule 60(b)(6) motion. Hence, the assignment of error to the Committee's denial of that motion is abandoned. N.C.R. App. P. 28. We note further that the standard of proof in attorney discipline proceedings is "clear, cogent, and convincing" evidence. Rules of the North Carolina State Bar, Art. IX, § 14(18) (1990); *N.C. State Bar v. Whitted*, 82 N.C. App. 531, 536, 347 S.E.2d 60, 63 (1986), *aff'd*, 319 N.C. 398, 354 S.E.2d 501 (1987). We note, finally, that the "[p]leadings and proceedings before a Hearing Committee shall conform as nearly as is practicable with requirements of the Rules of Civil Procedure and for trials of non-jury civil causes in the Superior Courts except as otherwise provided hereunder." Rules of the North Carolina State Bar, Art. IX, § 14(12) (1990).

The defendant contends that the Committee's findings do not support its conclusion that by sending his letter of 5 August 1987 the defendant "engaged in conduct prejudicial to the administration of justice, and thereby violated Rule 1.2 of the Rules of Professional Conduct."

## N.C. STATE BAR v. BEAMAN

### [100 N.C. App. 677 (1990)]

We agree that the findings recited by the Committee in its Order dated 30 January 1989 are inadequate to support its conclusion. The Committee's conclusion characterizes defendant's letter to the Greens' attorney as "threatening." However, the Committee made no findings as to the exact nature of that threat nor as to the specific relationship between the defendant's "threatening letter" and the administration of justice. Thus, the Committee's findings failed to conform to North Carolina Rules of Civil Procedure, Rule 52(a)(1), which provides that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." Under Rule 52(a)(1), the

> facts required to be found specially are those material and ultimate facts from which it can be determined whether the findings are supported by the evidence and whether they support the conclusions of law reached. . . . In other words, a proper finding of facts requires a specific statement of the facts on which the rights of the parties are to be determined, and those findings must be sufficiently specific to enable an appellate court to review the decision and test the correctness of the judgment.

*Quick v. Quick*, 305 N.C. 446, 451, 290 S.E.2d 653, 657 (1982).

In her opening statement before the Disciplinary Hearing Committee, counsel for the plaintiff stated:

> This case is about a letter written by the defendant Mr. Stephen Beaman. There are two issues before you today, and that is, first of all, what does the letter mean, and second of all, was there a violation of the Rules depending on what the letter meant?
>
>         * * * *
>
> The only real issues, or the only real dispute we have, is, "Is this letter a threat to reveal client confidences?" If it is, is that a violation of Rule 4, or Rule 1.2(D).

The Committee's Order simply fails to resolve the issues posed by the plaintiff's complaint and the evidence presented. The Committee failed to determine the nature of the threat, if any, posed by the defendant's letter of 5 August 1987, and to determine how

by intent or effect the defendant's conduct was prejudicial to the administration of justice. The cause must be remanded for specific findings on these issues. The Order is reversed and the cause remanded.

Reversed and remanded.

Judges ORR and DUNCAN concur.

Judge DUNCAN concurred in this opinion prior to 29 November 1990.