IN THE MATTER OF: JERRY BANKS MOORE, APPLICANT TO THE 1978 BAR EXAMINATION

No. 12

(Filed 6 January 1981)

1. Attorneys at Law § 2— admission to practice — insufficiency of finding of Board of Law Examiners

Finding of fact by the Board of Law Examiners that applicant "made false statements under oath on matters material to his fitness of character" inadequately resolved the factual issue which it addressed and was too vague to permit appropriate judicial review, where the evidence tended to show that applicant had committed a murder and an assault 14 years ago but argued that he had been duly punished for the acts, fully rehabilitated since they occurred, and that their evidentiary force had been long spent; to counter this argument the Board offered evidence that several years after these events applicant had made belligerent statements to a person to the effect that under some circumstances he was prepared to kill again, but applicant denied making these statements; the Board, in finding that applicant made "material false statements under oath," did not indicate which statements it considered to be untruthful; consequently, neither a reviewing court nor the applicant could be certain as to the content or materiality of the false statements referred to, and the Board could not meet its burden of proving specific acts of misconduct without setting out with specificity what they were and that they had been proved by the greater weight of the evidence.

2. Attorneys at Law § 2— admission to practice — finding that applicant lied under oath

In determining an applicant's fitness to practice law, the Board of Law Examiners should not conduct a hearing to consider applicant's alleged commission of specific acts of misconduct and, without a finding that he committed the prior acts, use his denial that he committed them as substantive evidence of his lack of moral character; rather, the Board should first determine whether in fact the applicant committed the prior acts of misconduct and, if it determines that he did, it must then say whether these acts so reflect on the applicant's character that they are sufficient to rebut his prima facie showing of good character.

3. Attorneys at Law § 2— admission to practice — findings by Board of Law Examiners

An applicant for admission to practice law was not prejudiced where the Board of Law Examiners found that applicant was paroled after serving a portion of his prison term but the Board failed to find that applicant was completely discharged from parole, since the reviewing court would take into account under a whole record review undisputed facts which favored applicant's position, and this would include, in this case, the fact of discharge from parole which applicant argued was unfairly omitted from the Board's findings.

4. Attorneys at Law § 2— application for admission to practice — failure to list assault - insufficiency of Board's findings

Where an applicant for admission to the practice of law had been convicted of assault and murder, finding by the Board of Law Examiners that applicant did

not disclose that he had been convicted of assault and battery on a female failed adequately to resolve the factual issue to which it was addressed where the factual issue before the Board was whether the omission was a mere inadvertence caused by applicant's initial failure to recall the conviction as an incident separate from the murder or was instead a purposeful omission designed to mislead the Board, the later correction of which was prompted only by notice of the hearing.

5. **Attorneys at Law § 2— character of applicant in question — sealing of examination results proper**

The Board of Law Examiners properly advised an applicant for admission to the practice of law that he would be permitted to take the Bar examination but that the result would be sealed until the Board had concluded its character evaluation, and the Board was not required subsequently to divulge applicant's examination result, since the result was irrelevant to the matter of applicant's character evaluation, and even if applicant failed the examination, this appeal would not be moot since it concerned applicant's character, a separate and distinct matter.

6. **Attorneys at Law § 2— applicant's showing of good moral character — sufficiency of evidence to rebut showing**

The Court on appeal could not conclude that as a matter of law the Board of Law Examiners' evidence was insufficient to support findings of fact which could rebut a prima facie showing of good moral character by an applicant for admission to the Bar where it was undisputed that applicant had committed and been convicted of murder and assault; the question before the Board was whether these acts occurring 14 years ago continued to constitute evidence that applicant was presently morally unfit to practice law; and only the Board through proper findings of fact and conclusions of law based thereon could answer the question as to whether events subsequent to the murder and assault demonstrated to the Board that applicant had been fully rehabilitated so that the evidentiary force of the 14 year old offenses was spent or whether they led to a contrary conclusion.

Justice BROCK did not participate in the consideration or decision of this case.

ON appeal pursuant to Section .1405 of the Rules Governing Admission to the Practice of Law (herein "Rules")[1] from a judgment, entered by *Judge Herring* on 5 February 1980 in WAKE Superior Court, affirming an order to the North Carolina Board of Law Examiners denying appellant permission to stand for the 1978 Bar Examination.

*Vaughan S. Winborne, Attorney for applicant appellant.*

*Rufus L. Edmisten, Attorney General, by Harry H. Harkins, Jr., Associate Attorney, for the state, and Fred P. Parker, III, Attorney*

---

[1]All references to the Rules are to those published by the Board in pamphlet form dated 23 August 1977.

*for the Board of Law Examiners.*

EXUM, Justice.

Appellant Jerry Banks Moore is an applicant for admission to the North Carolina Bar. He was denied permission to stand for the 1978 Bar Examination by the Board of Law Examiners (herein "Board") because of its decision that he had failed to demonstrate his good moral character. The principal question presented is whether certain findings of fact made by the Board adequately resolve the factual issues to which they are addressed. We conclude that two of them do not. We therefore reverse the judgment of the superior court which affirmed the Board's order, and remand for further proceedings.

Applicant Moore filed his application for admission to the bar in January, 1978. His application was complete. It was accompanied by four certificates of moral character signed by persons acquainted with him. Subsequently the Board twice summoned Moore to appear before it for inquiry into his moral character. The first hearing was held on 5 July and 7 July, 1978. Five days later the Board notified Moore that he would be permitted to take the 1978 Bar Examination but that the results would be withheld pending further investigation. Moore took the examination. A second hearing was held on 18 October 1978. On 27 December 1978 the Board issued an order which in effect denied Moore permission to be admitted to the bar because he failed to satisfy the Board "that he is of such good moral character as to be entitled to the high regard and confidence of the public." On applicant's appeal to Wake Superior Court Judge Herring affirmed this order.

Undisputed facts, adduced at the hearings, are essentially as follows: In 1963 Moore secured employment as a pharmaceutical representative and moved to Cary, North Carolina. He became a citizen of good standing in the community and was involved in a number of civic and church activities. In 1966, however, Moore and his wife began experiencing marital difficulties. On 20 July 1966 Moore discovered his wife with another man; and, after his wife brandished a handgun, struck her in the face. This incident led to Moore's subsequent trial and conviction for assault upon a female, whereupon he paid eleven dollars in court costs and a fifty dollar fine. Several weeks later, in mid-August, 1966, Moore and his wife separated. On 29 August 1966 Moore shot and killed a Mr. Barney Adler, Moore's estranged wife's paramour. Moore was tried for

first degree murder in Wake Superior Court and, despite his contention of self-defense, was convicted of second degree murder. Moore was incarcerated for over six years during which time he participated in work-release and college study-release programs. He graduated from the University of North Carolina at Charlotte (UNC-C) with honors in religion, and subsequently attended and graduated from South Texas Law School. Moore's parole was terminated unconditionally in 1975 and his rights of citizenship were restored at that time.

In response to a question asking for a listing of all arrests and convictions other than parking violations Moore failed to list his conviction for assault on a female either on his application or registration forms filed, respectively, on 5 January 1978 and 10 February 1978. He did ultimately disclose this incident by an amendment to his application filed 1 July 1978.

The central factual dispute in the record arises out of a conflict between Moore's testimony and that given by Mr. Sam Adler, father of Barney Adler, and Ms. Ira Myers, secretary to Dean William S. Mathis at UNC-C. Both Mr. Adler and Ms. Myers testified at the 18 October 1978 hearing. Mr. Adler testified that on or about 13 August 1966 Moore came to the Adler residence and warned Barney that "I don't want you to see my wife, if you do I'll kill you." Ms. Myers testified that Moore, in a conversation with her during the summer of 1970, made a statement to the effect that "My government took me into service, they taught me how to kill, and the more people I killed, the more medals and pay I received, but when I came home and did what my government taught me, they punished me." She further testified that during either the summer of 1973 or the summer of 1974 Moore made a statement to the effect that "I don't like to see anyone hurt the woman I love. I have already killed one man and I have paid for it; it did me no harm and I would not hesitate to kill another man who hurt the woman I love." Ms. Myers intimated that Moore's remark was in reference to Dean Mathis who was then involved in a tenure dispute with Moore's second wife. Applicant Moore repeatedly denied that he threatened to kill Barney Adler or that he made any such statements to Ms. Myers. The issue thus becomes whether Moore did in fact make these belligerent statements or any of those attributed to him.

Another factual issue arose when Moore explained that he had not originally listed the assault on a female conviction because "it

was a part of a chain of events which led up to the second degree murder of Mr. Barney Adler . . . . There's no desire on my part to hide anything from the bar. I'm quite aware that the bar has the power to check FBI records." This issue thus became whether Moore inadvertently omitted this incident because he had ceased to recall it as an incident separate and apart from the murder itself or whether the omission was willful and intended to mislead the Board.

The Board, in concluding that Moore had failed to demonstrate his moral character, made the following findings of fact and conclusion:

"1. The applicant was charged with first-degree murder and convicted of second-degree murder in the Superior Court for Wake County, North Carolina, in 1966, and was duly sentenced to confinement in the prison system of the State.

2. The applicant, after serving a portion of the term for which he was sentenced, was duly paroled by lawful authority.

3. On several occasions in his testimony before the Board, the applicant made false statements under oath on matters material to his fitness of character.

4. In response to a question on the registration and a similar question on the application requiring that all of his arrests and convictions other than parking violations be listed, the applicant failed to disclose that in 1966 he had been arrested, tried and convicted in Durham County, North Carolina, for assault and battery on a female. Although the applicant filed his registration and his application with the Board on February 10, 1978 and January 5, 1978, respectively, he first disclosed this arrest and conviction to the Board by an amendment to his application filed on July 1, 1978 shortly before a hearing by the Board on July 6, 1978 as to his fitness of character, the Board having given notice to the application of that hearing on June 22, 1978.

Based upon the foregoing Findings of Fact, the Board concludes that the applicant has failed to satisfy the Board that he is of such good moral character as to be

entitled to the high regard and confidence of the public and therefore to take the 1978 North Carolina Bar Examination."

Accordingly, the Board ordered that Moore's application to take the 1978 Bar Examination be denied and that the results of his examination be permanently sealed.

I

[1] Moore first contends that finding number three, that Moore "made false statements under oath on matters material to his fitness of character," inadequately resolves the factual issue which it addresses and is too vague to permit appropriate judicial review. We agree.

The Board of Law Examiners was created for the purpose of "examining applicants and providing rules and regulations for admission to the bar." G.S. 84-24; *In re Willis*, 288 N.C. 1, 215 S.E. 2d 771, *appeal dismissed*, 423 U.S. 976 (1975); *Baker v. Varser*, 240 N.C. 260, 82 S.E. 2d 90 (1954). General Statute 84-24 authorizes the Board "to make or cause to be made such examinations and investigations as may be deemed by it necessary to satisfy it that the applicants for admission to the Bar possess the qualifications of character and general fitness requisite for an attorney and counselor-at-law." Each applicant for admission has, pursuant to Rule .0601, the burden of proving his good moral character, and must initially come forward with sufficient evidence to make out a prima facie case. *In re Rogers*, 297 N.C. 48, 253 S.E. 2d 912 (1979).[2]

When an applicant makes a prima facie showing of good moral character and the Board, to rebut the showing, relies on specific acts of misconduct the commission of which are denied by the applicant, the Board must prove the specific acts by the greater weight of the evidence. *Id.* "When a decision of the Board of Law Examiners rests on a specific fact or facts the existence of which is contested, the Board's duty to resolve the factual dispute by specific findings is no less than that of other administrative agencies." *In re Rogers, supra* at 56-57, 253 S.E. 2d at 918. Orders rendered by an administrative agency on the basis of findings which do not adequately resolve crucial factual conflicts before the agency preclude any kind of meaningful judicial review of the orders and require

---

[2]*Rogers* was decided *after* the Board's hearing and order in this case.

that the orders be set aside and the matter remanded for further proceedings. *Commissioner of Insurance v. Automobile Rate Office*, 293 N.C. 365, 239 S.E. 2d 48 (1977). As noted by the United States Supreme Court in *Wyoming Gas Co. v. Federal Power Commission*, 324 U.S. 626, 634 (1945):

> "[W]e must first know what the 'finding' is before we can give it . . . conclusive weight. We have repeatedly emphasized the need for clarity and completeness in the basic or esential findings on which administrative orders rest. *Florida v. United States*, 282 U.S. 194, 215; *United States v. Baltimore & Ohio R. Co.*, 293 U.S. 454, 464; *United States v. Chicago, M., St. P. & P.R. Co.*, 294 U.S. 499, 504-505, 510-511; *United States v. Carolina Carriers Corp.*, 315 U.S. 475, 488-489. Their absence can only clog the administrative function . . . ."

Similarly, "[c]ourts ought not to have to speculate as to the basis for an administrative agency's conclusion." *Northeast Airlines Inc. v. CAB*, 331 F. 2d 579, 586 (1st Cir. 1964). *Accord, Austin v. Jackson*, 353 F. 2d 910, 911 (4th Cir. 1965).

In the present case we find that Moore through his application and evidence in support thereof made out a prima facie showing of his present good moral character. The question then becomes whether certain specific acts of misconduct committed or allegedly committed by Moore are sufficient to rebut this showing. Two of these acts, a murder and an assault, were admittedly committed by Moore some fourteen years ago. He argues, however, that he has been duly punished for the acts, fully rehabilitated since they occurred, and that their evidentiary force has been long spent. To counter this argument the Board offered evidence that several years after these events Moore had made belligerent statements to Ms. Ira Myers to the effect that under some circumstances he was prepared to kill again. Moore denied making these statements. Thus the most crucial factual issue in these proceedings was joined.

We hold that finding number three fails adequately to resolve this issue and lacks the requisite specificity to permit adequate judicial review of the Board's order. The Board, in finding that Moore made "material false statements under oath," did not indicate which statements it considered to be untruthful. Consequently neither a reviewing court nor the applicant can be certain as to the content or materiality of the false statements referred to. The Board

cannot meet its burden of proving specific acts of misconduct without setting out with specificity what they are and that they have been proved by the greater weight of the evidence. The Board in its brief attempts to specify the false statements referred to in the disputed finding. Suffice it to say that the specifications must be contained in the Board's order. Its brief should be directed to whether the specific findings are supported by the evidence and if so whether they along with other findings of misconduct are sufficient to rebut the applicant's prima facie case.

**[2]** In addition, we question whether the Board should rely on a finding that an applicant lied under oath when the finding is based on nothing more than the applicant's denial of accusations against him. The purpose of the hearing before the Board is to probe matters set forth in the notice of hearing required by Rule .1202. Such an inquiry must of necessity concern acts which occurred *prior* to the hearing. The Board should not conduct a hearing to consider applicant's alleged commission of specific acts of misconduct and *without a finding that he committed the prior acts* use his denial that he committed them as substantive evidence of his lack of moral character. The Board should first determine whether in fact the applicant committed the prior acts of misconduct. If it determines that he did, it must then say whether these acts so reflect on the applicant's character that they are sufficient to rebut his prima facie showing of good character. *In re Rogers, supra,* 297 N.C. 48, 253 S.E. 2d 913.[3]

II

**[3]** Moore next maintains that findings two and four are not "complete and fair with the full truth from the evidence." He argues that finding two, which states that Moore was paroled after serving a portion of his prison term, fails to find that he was completely discharged from parole effective 25 October 1975.[4] Finding four, which states that Moore initally failed to disclose his conviction for

---

[3]In many instances finding the applicant to have committed the prior acts will be sufficient to support a conclusion of lack of the requisite moral character. There may, however, be instances where the prior acts are not dispositive of the character determination; applicant's false statements about the acts then take on added significance. In either event the Board must prove the commission of the prior act and should first make a finding in regard thereto. It may then find, if it is so convinced, that the applicant testified falsely under oath.

assault and battery upon a female, fails, he argues, to identify the female assaulted as his wife, to disclose the time of the assault in relation to the subsequent murder of Barney Adler, and to include Moore's explanation for omitting this conviction from his initial application.

While the Board's findings on each material factual issue should specifically, fully, and fairly resolve the issue, applicant here has not been prejudiced by whatever incompleteness exists in finding two. The matter omitted from this finding is not the subject of a material factual dispute. The findings and conclusions of the Board are judicially reviewed by giving consideration to the whole record before the Board. *In re Rogers, supra,* 297 N.C. 48, 253 S.E. 2d 912. This requires the reviewing court "in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence." *Thompson v. Board of Education,* 292 N.C. 406, 410, 233 S.E. 2d 538, 541 (1977). Thus a reviewing court must take into account under a "whole record" review at least undisputed facts which favor the applicant's position. This would include, here, the fact which applicant argues was unfairly omitted from finding two. There is, therefore, no error prejudicial to applicant arising from this omission.

**[4]** Not so, however, with regard to finding four. This finding, like finding three, fails adequately to resolve the factual issue to which it is addressed. In view of the applicant's explanation of his failure

[4]Moore also contends before us that he was granted a "Pardon or Pardon of Forgiveness" by Governor Hunt on 19 October 1979. The alleged pardon is not a part of the record on appeal. It was not before the Board or the Superior Court. We cannot consider it.

Since we are remanding this case, applicant Moore will have the opportunity to request the Board to take cognizance of such a pardon, if one exists, and to give it such weight, if any, as it deems it to deserve. Rule .1207 provides: "After a final decision has been reached by the board ... a party may petition the board to reopen or reconsider a case. Petitions will not be granted except when petitioner can show that the reasons for reopening or reconsidering the case are to introduce newly discovered evidence which was not presented at the initial hearing because of some justifiable, excusable, or unavoidable circumstances and that fairness and justice require reopening or reconsidering the case." *See also,* Annot. "Criminal Record as Affecting Applicant's Moral Character for Purposes of Admission to the Bar," 188 A.L.R. 3d 192 (1978); Annot., "Pardon as Restoring Public Office or License or Eligibility Therefor," 58 A.L.R. 3d 1191 (1974).

initially to list the assault conviction, the factual issue before the Board was whether the omission was a mere inadvertence caused by applicant's initial failure to recall the conviction as an incident separate from the murder or was instead a purposeful omission designed to mislead the Board the later correction of which was prompted only by notice of the hearing. For the reasons discussed in Part I of this opinion in connection with finding three, the matter must be remanded in order that the Board can appropriately resolve the factual issue addressed by finding four.

### III

**[5]** Applicant Moore also objects to the sealing of his examination result. The Board advised Moore that he would be permitted to take the 1978 Bar Examination but that the result would be sealed until the Board concluded its character evaluation. Moore took the examination on that basis. After filing his appeal in Wake Superior Court, however, Moore submitted the following interrogatory to the Board: "Did the applicant, Jerry Banks Moore, pass the written 1978 North Carolina Bar Examination?" Moore maintains that a non-passing grade on the written examination moots this appeal; therefore the Board should be required to divulge his examination result. The Board objected on the ground that the examination result was irrelevant to the matter under consideration. Judge Bailey, on 4 October 1979, entered an order sustaining the Board's objection.

We affirm this ruling. Moore's examination score is not relevant to the investigation regarding his character. The present case is concerned only with Moore's character, and does not concern his learning in the law. If Moore failed the examination he could simply take it again. In contrast, however, Rule .0605 provides that an applicant whose application is denied on character grounds may not reapply for the examination until three years after the date of the denial. Even if Moore failed the examination this appeal would not be moot since it concerns his character, a separate and distinct matter.

### IV

After Moore gave notice of appeal to Wake Superior Court pursuant to Rule .1402 the Board, as it was required to do under Rule .1403, filed with the court the record of the case. Defendant then moved that the record be corrected in certain specific respects

in apparent reliance on that provision of Rule .1403 which provides, "[t]he court may require or permit subsequent corrections or additions to the record when deemed desirable." Rule .1404 provides further that the mattter shall be heard in Wake Superior Court on the record "but no evidence not offered at the hearing [before the Board] shall be taken except that in cases of alleged omissions or errors in the record. Testimony thereon may be taken by the court."

The motion came on for hearing before Judge Bailey at the 1 October 1979 Non-Jury Civil Session of Wake Superior Court. On 4 October 1979 Judge Bailey entered an order allowing a number of Moore's requests for additions and corrections to the record. Judge Bailey denied, however, Moore's motion to include in the record a copy of Moore's transcript at UNC-C. He also denied Moore's motion to include in the record certain letters certifying to Moore's good character. Moore contends that both of these rulings were prejudicially erroneous.

Moore's UNC-C transcript was attached to his application for admission to the bar. It was not included in the record on appeal apparently because the Board considered it to be irrelevant to any of the issues raised on appeal. Moore argues that the transcript tends "to impeach the credibility of the testimony of Miss Ira Myers." The transcript is in the record on appeal to this Court.[5] Insofar as the UNC-C transcript does impeach Mrs. Myers' testimony, it was before the Board. Applicant, therefore, was permitted to take whatever advantage he could from the transcript before the Board, and the Board was able to consider the transcript in making its findings. Since, however, appellate review of the Board's decision is made on the whole record, the appellate court needs to have

---

[5]The transcript shows that Moore attended UNC-C during the summers of 1970, 1973 and 1974. It further shows that he did not attend UNC-C from 11 November 1970 until summer 1973. Ms. Myers testified at the 18 October 1978 hearing that Moore made the statements in question during the summer of 1970, and during the summer of either 1973 or 1974. In her affidavit, however, Ms. Myers states: "That during the summer of 1972, she assisted Jerry Banks Moore, at his request, in order for him to receive extra hours credit from the study that he had completed while he was in the military; that following this period of time, she did see Jerry Moore, but he did not visit her as frequently as he had in the past; that on one occasion he visited her ofice in the Rowe Building and during this converstion made, in substance, the following statement: 'I don't like to see anyone hurt the woman I love. I have already killed one man and I have paid for it and it did me no harm and I would not hesitate to kill another man who hurt the woman I love.'"

before it any evidence which might fairly detract from the decision of the Board. We believe Moore's UNC-C transcript should have been included as a part of the record on appeal. It may be so included if after further proceedings on remand, applicant again appeals.

Judge Bailey ruled correctly in exluding the four character letters from the record because they were not duly offered in evidence at the hearings before the Board. No testimony on this controversy was taken before Judge Bailey. According to both the Board's and the applicant's brief, however, two of the letters were offered at the hearings in July but rejected because they were not signed. These letters and two others were then purportedly signed and mailed to the Board between the July and October hearings but they were never formally offered into evidence at the October hearing. Mailing the letters to the Board did not get them into evidence. It was, therefore, not error for Judge Bailey to deny applicant's motion to have them included in the record. Again, however, when the matter is remanded applicant may petition the Board to reopen the case in order to give applicant an opportunity to offer the letters. Rule .1207.

Judge Bailey, responding to applicant's questioning of the accuracy of the transcript of the testimony before the Board, denied applicant's motion to insert additional material in the transcript "without prejudice to the applicant's right to renew same upon providing evidence that comments or testimony offered at the hearing were omitted from the transcript." Moore provided no such evidence. The Board, however, furnished the court reporter's affidavit certifying to the accuracy of the transcript. Applicant did not except to any of Judge Bailey's rulings in this regard. He does except to and assigns as error Judge Herring's later denial of this motion to strike the court reporter's affidavit from the record. There is obviously no merit to this assignment of error. The Board was entitled to meet applicant's questioning of the accuracy of the transcript with whatever relevant evidence it could muster. Its reliance on the court reporter's affidavit was proper. Judge Herring did not err in denying applicant's motion to strike the affidavit.

V

**[6]** Finally, Moore contends the Board erred in concluding that he has failed to demonstrate his good moral character. He urges this Court to conclude that, as a matter of law, the Board's evidence is

In re Moore

insufficient to support findings of fact which could rebut his prima facie showing of good moral character. We so concluded in *In re Rogers, supra,* 297 N.C. 48, 253 S.E. 2d 912. We do not so conclude here. In *Rogers* there was an absence both of requisite findings and of sufficient evidence. Here all that is lacking are the requisite findings.

We are not unmindful that apart from applicant's murder conviction, his omission of the assault conviction from his initial application and registration forms, and the belligerent statements he is accused of having made, applicant has made a relatively strong showing that he possesses the requisite good moral character for admission to the bar. Prior to the murder his character and reputation in the community where he lived was good. The murder itself and the assault are, of course, severe blemishes. But applicant argues: (1) Both arose out of his domestic difficulties and constitute one unfortunate episode in his life that occurred some fourteen years ago. (2) He has paid his debt to society for both offenses. (3) He has been fully rehabilitated as evidenced by his exemplary record and conduct both in prison and after his parole.[6]

Nonetheless this case differs from *Rogers.* In *Rogers* we concluded in light of the whole record that the evidence was simply insufficient to support findings that Rogers had committed specific acts of misconduct. Therefore Rogers' strong prima facie showing of good moral character was, as a matter of law, unrebutted. Here it is undisputed that Moore has committed and been convicted of two specific acts of misconduct: murder and assault. The real question for the Board is whether these acts, occurring some fourteen years ago, continue to constitute evidence that Moore is *presently* morally unfit to practice law. Stated another way, the question is whether events subsequent to these acts demonstrate to the Board that Moore has been fully rehabilitated so that the evidentiary force of the fourteen-year-old offenses is spent or whether they lead to a contrary conclusion. Only the Board, through proper findings of fact and conclusions based thereon, can answer these questions in the first instance. This is why the factual issues addressed by findings three and four loom so crucial and why the matter must be remanded to the Board for a proper resolution of these issues. For if Moore did in fact utter in 1970 and 1973 or 1974 the belligerent

---

[6]*See* Annot., "Criminal Record as Affecting Applicant's Moral Character for Purposes of Admission to the Bar," *supra* at n.4.

statements attributed to him, this would be more recent evidence of his attitude about the propriety of violence as a dispute settling device. It would provide the Board a better key with which to unlock the question of Moore's rehabilitation from his earlier offenses. Of almost equal importance is the question of Moore's omission of the assault conviction from his original application and registration forms. Was this an intentional omission designed to mislead the Board or was it a mere inadvertence, a matter initially forgotten by Moore because of the long lapse of time?

These crucial factual issues need to be resolved before the Board can properly answer in the first instance the questions of whether Moore has indeed been rehabilitated and whether he *presently* possesses the good moral character prerequisite for admission to the bar. It is not the function of this Court to determine factual issues. On this record we cannot properly address the correctness of the Board's ultimate conclusions.

The decision, therefore, of the superior court affirming the Board's order is reversed and the matter remanded to Wake Superior Court for further remand to the North Carolina Board of Law Examiners for further proceedings not inconsistent with this opinion.

Reversed and Remanded.

Justice BROCK did not participate in the consideration and decision of this case.