THE NORTH CAROLINA STATE BAR, PLAINTIFF-APPELLEE v. ROBERT MAGGIOLO, ATTORNEY, DEFENDANT-APPELLANT

No. COA95-1232

(Filed 1 October 1996)

1. **Attorneys at Law § 78 (NCI4th)— disbarment—conflict of interest—evidence sufficient**

   The findings and conclusions made by the Disciplinary Hearing Commission of the North Carolina State Bar in disbarring appellant were supported by substantial evidence where the interests of a real estate buyer, Oak Hollow Development Corporation, in which appellant was a shareholder, conflicted with those of a seller, the Laws; appellant failed to advise the Laws to seek the advice of independent counsel; appellant stipulated that an attorney-client relationship existed between himself and the Laws at least to the extent of preparing the deed; appellant failed to advise the Laws regarding the consequences of

accepting an unsecured note; appellant answered the Laws' questions and therefore advised them concerning the sales agreement; and the DHC found that the interest of appellant's client, the buyer, conflicted with the interests of the seller.

**Am Jur 2d, Attorneys at Law §§ 48-50.**

**What constitutes representation of conflicting interests subjecting attorney to disciplinary action. 17 ALR3d 835.**

**Disciplinary proceeding based upon attorney's direct or indirect purchase of client's property. 35 ALR3d 674.**

2. **Attorneys at Law § 78 (NCI4th)— disbarment—conflict of interest—evidence sufficient**

The Disciplinary Hearing Commission of the North Carolina State Bar did not err in finding that appellant had knowledge that promissory notes prepared by a realtor would be used to perpetrate a fraud or deceit on the Real Estate Commission where the parties stipulated that appellant advised a realtor, Darst, to prepare notes for a purchaser to sign to indicate that earnest money had been paid by promissory notes; the parties stipulated that the realtor gave copies of the backdated promissory notes to an investigator with the intent to deceive the Real Estate Commission; and testimony from the realtor supports the finding that copies were given to the investigator with knowledge and advice from appellant, although appellant presented contrary testimony.

**Am Jur 2d, Attorneys at Law § 43.**

**What constitutes representation of conflicting interests subjecting attorney to disciplinary action. 17 ALR3d 835.**

**Conduct in connection with malpractice claim as meriting disciplinary action. 14 ALR4th 209.**

3. **Attorneys at Law § 78 (NCI4th)— disbarment—conflict of interest—evidence sufficient**

There was sufficient evidence to support findings by the Disciplinary Hearing Commission of the North Carolina State Bar that appellant did not disclose to a bank the existence of a sales agreement and notes prior to the bank advancing funds to a

N.C. STATE BAR v. MAGGIOLO

[124 N.C. App. 22 (1996)]

development company in which appellant was a shareholder and that the misrepresentation was of a material fact which was necessary for the bank's consideration in determining whether to advance funds. The record indicates that appellant was under a duty to update the information he provided to the bank and, additionally, appellant stipulated that although he represented to the bank that the loan would be used to purchase and develop the Laws Farm property, none of the amount advanced was paid as the purchase price. Appellant's contention that the bank was not harmed by his statements and that DHC erred in finding that the misrepresentations were material is directly contradicted by the testimony of a loan officer for the bank.

**Am Jur 2d, Attorneys at Law §§ 31, 48.**

**False statement as to existing encumbrance on chattel in obtaining loan or credit as criminal false pretense. 53 ALR2d 1215.**

Appeal by defendant from order of the Disciplinary Hearing Commission entered 15 June 1995. Heard in the Court of Appeals 27 August 1996.

*A. Root Edmonson, Deputy Counsel for the North Carolina State Bar, plaintiff-appellee.*

*Browne, Flebotte, Wilson and Horn, P.L.L.C., by Daniel R. Flebotte, for defendant-appellant.*

WALKER, Judge.

On 24 February 1994, the North Carolina State Bar filed a complaint against defendant, Robert Maggiolo, alleging that Maggiolo had violated the North Carolina Code of Professional Responsibility. The allegations stem from Maggiolo's involvement in a series of real property transactions as a fifty percent (50%) shareholder and Vice President of Oak Hollow Development Corporation, a real estate development company. The other shareholder was Glenn A. Darst, President of Oak Hollow Development Corporation.

Evidence presented by stipulation of the parties tended to show the following: On 11 August 1989, Oak Hollow entered into a sales agreement with Thomas F. Laws to purchase approximately 70 acres of real estate owned by the Laws. The purchase price for the Laws Farm was $199,810.00. The sales agreement required $2,500.00 of the

N.C. STATE BAR v. MAGGIOLO

[124 N.C. App. 22 (1996)]

purchase price to be paid at the signing of the agreement and the remaining amount to be paid pursuant to an unsecured promissory note.

An attorney-client relationship existed between Maggiolo and the Laws at least to the extent of preparing the deed for the Laws to sign. However, at the closing, Maggiolo did not advise the Laws regarding the consequences of failing to have their promissory note secured. In addition, Maggiolo failed to advise the Laws to consult with an independent attorney for advice concerning the terms of the sales agreement.

In September 1989, Maggiolo applied for a loan at The Village Bank in Chapel Hill, North Carolina. Maggiolo represented to the bank that the loan was going to be used to purchase the Laws Farm property and prepare the property for development. The loan amount was a maximum of $175,000.00 of which $132,500.00 was represented to be the purchase price of the property.

As a guarantor of the loan, Maggiolo presented a financial statement to the bank which did not disclose the unsecured promissory note to the Laws in the schedule relating to the assets and liabilities of Oak Hollow. On 20 September 1989, Maggiolo signed a promissory note to the bank and executed a deed of trust for the $175,000.00 loan. None of the $132,500.00 advanced by the bank was paid to the Laws as part of the purchase price.

Prior to the purchase of the Laws Farm property, Oak Hollow owned property known as Rougemont Retreat in Durham County. On 12 December 1988, Rick Ladd signed an Offer to Purchase property from Oak Hollow located at 3510 Moriah Road and 3617 Red Mountain Road in Rougemont Retreat subdivision. Each Offer to Purchase indicated that Ladd paid $1,000.00 as an earnest money deposit, although no earnest money deposit was required. Maggiolo prepared closing statements indicating that Ladd paid $1,000.00 in earnest money for each of the lots and mailed copies of the statements to Ladd's lender, Financial First Federal.

On 12 January 1989, Ladd signed another Offer to Purchase property from Oak Hollow located at 3623 Red Mountain Road. The contract indicated that Ladd paid $2,500.00 as an earnest money deposit when in fact no deposit was received. On 17 March 1989, Maggiolo prepared the closing statement for the property and listed $2,500.00 as having been paid in earnest money.

Between March 1991 and June 1991, the North Carolina Real Estate Commission questioned Darst about the handling of the Ladd earnest money deposits. Darst sought advice from Maggiolo who advised him to prepare notes for Ladd to sign indicating that the earnest money in each of the transactions had been paid by promissory notes. Darst had his secretary prepare three promissory notes for Ladd's signature which were back dated to the dates that the Offer to Purchase contracts were signed. In order to obtain Ladd's signature, Darst agreed to mark Ladd's copies "satisfied in full." However, the copies which Darst turned over to the Real Estate Commission were not marked satisfied.

The Disciplinary Hearing Commission (DHC) made findings of fact and concluded that:

. . .

(a) By reading the Sales Agreement to the Laws and answering their questions about the document, and by advising the Laws to sign the Sales Agreement, the promissory note, and the deed he had prepared for them to sign at the August 11, 1989 closing without advising the Laws to seek independent counsel, Maggiolo gave advice to a person who was not represented by counsel, other than the advice to seek counsel, when the interest of that person were [sic] in conflict with the interest of Maggiolo's client, Oak Hollow, in violation of Rule 7.4(B).

(b) By advising the bank's representatives that $132,500.00 of the loan proceeds were to be used to purchase the Laws Farm property when it was not, by failing to advise the bank's representatives about the transaction that Oak Hollow had already entered into with the Laws for the purchase of the Laws Farm property, and by failing to advise the bank's representatives about the promissory note that had been entered into with the Laws prior to the bank advancing the $132,500.00 on the loan, Maggiolo engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation in violation of Rule 1.2 (C); and knowingly made a false statement of fact in violation of Rule 7.2(A)(4).

(c) By advising Darst to create back-dated promissory notes to give the commission's investigator with the intent to deceive the investigator, Maggiolo counseled or assisted a client in conduct he knew was fraudulent in violation of Rule 7.1(A)(4) and

7.2(A)(8) and participated in the creation of evidence when he knew the evidence was false in violation of Rule 7.2(A)(6).

. . .

Upon concluding that Maggiolo violated certain provisions of the Rules of Professional Conduct, the DHC entered an order of discipline disbarring Maggiolo from the practice of law.

**[1]** On appeal, Maggiolo does not assign error to any of DHC's conclusions and as such our inquiry will be limited to whether the findings are supported by substantial evidence. By way of his first assignment of error, Maggiolo argues that Finding of Fact No. 7 is not supported by adequate evidence. DHC found as follows:

> 7. At the closing, the interests of Maggiolo's client, Oak Hollow, conflicted with the interests of the Laws. Maggiolo read the Sales Agreement to the Laws and answered their questions about it. Maggiolo did not advise the Laws to consult with an independent attorney for advice concerning the terms of the Sales Agreement. The Laws expected the documents prepared by Maggiolo to protect their interests.

Review of disciplinary hearing decisions of the Commission is governed by the "whole record" test. *N.C. State Bar v. DuMont*, 304 N.C. 627, 642, 286 S.E.2d 89, 98 (1982).

> In applying the whole record test to the facts disclosed by the record, a reviewing court must consider the evidence which in and of itself justifies or supports the administrative findings and must also take into account the contradictory evidence or evidence from which conflicting inferences can be drawn. . . . Under the whole record test there must be substantial evidence to support the findings, conclusions and result. G.S. § 150A-51 (5). The evidence is substantial if, when considered as a whole, it is such that a reasonable person might accept as adequate to support a conclusion.

*Id.* at 643, 286 S.E.2d at 98-99. The whole record test does not permit a reviewing court to replace the DHC's judgment as between two reasonably conflicting views, even though the Court may have justifiably reached a different decision. *North Carolina State Bar v. Nelson*, 107 N.C. App. 543, 550, 421 S.E.2d 163, 166 (1992), *affirmed*, 333 N.C. 786, 429 S.E.2d 716 (1993).

Here, it is apparent that the interests of the buyer, Oak Hollow, and the seller, the Laws, were conflicting. Yet, it is undisputed that Maggiolo failed to advise the Laws to seek the advice of independent counsel. The record shows that Maggiolo stipulated to this fact prior to the disciplinary hearing and that he is bound by this stipulation on appeal. *Moore v. Richard West Farms, Inc.*, 113 N.C. App. 137, 141, 437 S.E.2d 529, 531 (1993) (holding that once a stipulation is made a party is bound by it). Maggiolo also stipulated that an attorney-client relationship existed between him and the Laws, at least to the extent of preparing the deed. However, Maggiolo failed to advise Mr. Laws regarding the consequences of accepting an unsecured note.

In addition, the record supports the DHC's finding that Maggiolo answered the Laws questions and therefore advised them concerning the sales agreement. Mr. Darst, who was present at the closing, testified in part as follows:

MR. SMITH: Now, who read to the Laws, this sales agreement that's Plaintiff's Exhibit Number 1?

THE WITNESS: Bob [Maggiolo].

. . .

MR. SMITH: As he read the document, would he read it paragraph by paragraph and look up to see whether or not they understood what he was reading?

THE WITNESS: Yes. And he had asked them if they had any questions.

. . .

MR. SMITH: During that process, would the Laws occasionally ask questions?

THE WITNESS: Right.

MR. SMITH: And would Mr. Maggiolo answer those questions?

THE WITNESS: Right. And they would say—well, like I said, this means that we won't have to pay any more taxes on it, like that was one of the things. But if they had any questions, then Bob would respond.

Mr. Laws testified that Maggiolo explained to them "what it [the sales agreement] was about. . . ." Mr. Laws expected Maggiolo to prepare documents that would protect his interests and "thought every-

thing would be done as it should be." In sum, we find substantial evidence to support DHC's Finding of Fact No. 7.

[2] Maggiolo combines Assignments of Error Nos. 7, 8 and 9 with his next argument that DHC erred in finding that the appellant had knowledge in fact that the promissory notes prepared by Darst would be used to perpetrate a fraud or deceit on the Real Estate Commission. Specifically, Maggiolo contends that DHC erred by making the following findings:

> 22. After being advised by Darst that Darst needed something to get the commission "off his back," Maggiolo assisted Darst in preparing notes for Ladd to sign to indicate that the earnest money in each of the transactions described above had been paid by promissory notes.

> 23. On or about July 10, 1991, upon Maggiolo's advice, Darst had his secretary prepare three promissory notes for Ladd's signature which were back dated to the dates that the Offer to Purchase contracts had been entered into.

> . . .

> 25. On or about July 12, 1991, Darst gave copies of the back-dated promissory notes to an investigator for the commission. Copies of the notes were given to the investigator for the commission by Darst with the intent to deceive the commission. The copies were given to the investigator with the knowledge and advice of Maggiolo.

Again, DHC's findings were supported by the parties' stipulations and by the testimony of Mr. Darst. The parties stipulated that "Maggiolo advised Darst to prepare notes for Ladd to sign to indicate that the earnest money in each of the transactions described above had been paid by promissory notes." Furthermore, it was stipulated that "Darst gave copies of the back-dated promissory notes to an investigator . . . with the intent to deceive the [Real Estate] [C]ommission."

Testimony from Mr. Darst supports DHC's finding that copies were given to the investigator with knowledge and advice from Maggiolo. Darst testified to the following:

> Q. Well, prior to making the new notes, did you discuss that with Mr. Maggiolo?

A. Well, we knew that the notes were not available. So I asked Bob how to make new notes.

Q. Did you tell him what it was for?

A. Yes.

Q. And did you tell him that the Real Estate Commission was asking you about the Rick Ladd situation?

A. Yes, sir.

Q. And what did he tell you as a result of your inquiry to him?

A. Well, we made the new notes. . . .

Q. And the purpose of doing these notes was to give them to the Real Estate Commission?

A. Correct.

Q. To show them that you hadn't received money that should have been in a trust account?

A. Correct.

While Maggiolo presented contrary testimony, Darst's testimony is sufficient for a reasonable person to conclude that the notes were given to the Real Estate Commission with knowledge and advice of Maggiolo. It would have served Darst no purpose to present the Commission with notes dated July 1991 in response to its inquiry regarding whether Darst had received earnest money from Ladd some two years earlier. Accordingly, we find sufficient evidence to support the DHC's Findings of Fact Nos. 22, 23 and 25.

[3] By way of his last argument, Maggiolo contends that there was insufficient evidence to support DHC's Findings of Fact Nos. 12 and 13. Paragraphs 12 and 13 of the DHC's Findings of Fact are as follows:

12. Maggiolo's failure to disclose to the bank the existence of the Sales Agreement between Oak Hollow and the Laws and his failure to disclose Oak Hollow's note to the Laws prior to the bank advancing $132,500.00 for the purchase of the Laws Farm property was a misrepresentation of material fact necessary for the bank's consideration in determining whether to advance those funds.

13. Maggiolo's representation to the bank that the $132,500.00 advance would be used to purchase the Laws Farm property,

when it was not so used, was a misrepresentation of material fact necessary for the bank's consideration in determining whether to advance those funds.

Maggiolo concedes in his brief that he did not disclose Oak Hollow's obligation to the Laws when he submitted a financial statement to Village Bank. Defendant contends Oak Hollow had not incurred the obligation to the Laws at the time he submitted the financial statement.

The record demonstrates, however, that Maggiolo was under a duty to update the information he provided to the bank. Just above the signature line, the financial statement form provides:

Each undersigned understands that you are relying on the information provided herein (including the designation made as to ownership of property) in deciding to grant or continue credit. Each undersigned represents and warrants that the information provided is true and complete and that you may consider this statement as continuing to be true and correct until a written notice of a change is given to you by the undersigned. . . .

In addition, Maggiolo stipulated that although he represented to Village Bank that the loan would be used to purchase and develop the Laws Farm property, none of the $132,500.00 advanced by the bank was paid to the Laws as part of the purchase price. Based on the record, there is sufficient evidence for a reasonable person to conclude that Maggiolo made such misrepresentations.

Maggiolo, however, contends that the bank was not harmed by his statements and as such DHC erred in finding that the misrepresentations were material. Maggiolo's argument is directly contradicted by the testimony of Glenn Wheless, a loan officer for Village Bank. Wheless testified:

Q. Was it your understanding that the $132,500 advanced by the bank on September the 20th was going to be for acquisition?

A. Yes, sir.

. . .

Q. Would it have made any difference to The Village Bank in deciding whether to make this work-out loan had you known that he also had obligated himself to pay Mr. Laws—Mr. and Mrs. Laws 197,000—plus dollars?

A. Yes, sir. I don't even think Mr. Roupas would have made the loan under those conditions with that type of debt on the property. And considering Mr. Maggiolo's nonpayment history with us within the last year or so, I think that would have been even more of a foolish choice to do. And we would not have—I would not have done it, as senior loan officer. Mr. Roupas could override me. I can't speak for him.

But normal banking practices, we have to answer to the regulators and to the board of directors. And I could not recommend that type loan to be made.

Wheless' testimony is sufficient for a reasonable person to conclude that Maggiolo's misrepresentations were material.

In sum, after careful review of the whole record, we hold that the findings and conclusions made by DHC are fully supported by substantial evidence. Accordingly, the trial court's order is

Affirmed.

Judges EAGLES and McGEE concur.