RUGBY GRANT HODGKINS, JR., Petitioner-Appellant v. NORTH CAROLINA REAL ESTATE COMMISSION, Respondent-Appellee

No. COA97-1356

(1 September 1998)

**1. Brokers— real estate license—integrity—solicitation of crime against nature**

The Real Estate Commission could properly consider an applicant's conviction of solicitation to commit a crime against nature in determining whether he possessed sufficient integrity

**HODGKINS v. N.C. REAL ESTATE COMM'N**

[130 N.C. App. 626 (1998)]

to be licensed as a real estate salesman. The applicant's solicitation of a crime against nature in a public park and his resultant conviction for a misdemeanor was relevant to determine the applicant's integrity as it reflects upon his willingness and ability to abide by the law.

## 2. Brokers— real estate license—integrity—solicitation of crime against nature

The Real Estate Commission's decision that an applicant did not possess the requisite integrity for licensure as a real estate salesman based upon his conviction of solicitation to commit a crime against nature was supported by substantial evidence in the record as a whole where the Commission made findings that the applicant committed the acts leading to his conviction and the applicant admitted that he committed the acts in question. The Commission did not err by concluding that the applicant failed to meet his burden of demonstrating that he possessed the requisite integrity where the applicant only submitted three brief unsworn letters of reference, the testimony of a potential employer based upon a six-month acquaintance with the applicant, and the applicant's own testimony in which he admitted that he had been convicted of a criminal offense of solicitation of a crime against nature.

Appeal by petitioner from order entered 10 June 1997 by Judge Stafford G. Bullock in Wake County Superior Court. Heard in the Court of Appeals 21 May 1998.

*Harry H. Harkins, Jr. for petitioner-appellant.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Thomas R. Miller, for respondent-appellee.*

McGEE, Judge.

Rugby Grant Hodgkins, Jr. (petitioner) applied to the North Carolina Real Estate Commission (Commission) on 20 November 1995 for licensure as a real estate salesman. Petitioner took the real estate licensing examination and was informed on 29 December 1995 that he had passed the examination. The Commission notified petitioner pursuant to the requirements of the Administrative Procedure Act that a hearing would be held on the question of whether petitioner "possess[ed] the requisite character for licensure." The Commission required this hearing based upon information

in petitioner's application that the Commission said tended to show that:

> (2) [Petitioner] disclosed that on or about May 29, 1991, in the District Court of Buncombe County, North Carolina, [petitioner] pleaded guilty to, and was convicted of, the criminal offense of soliciting a crime against nature. As a result of his conviction, [petitioner] was sentenced to a term of imprisonment of two years which was suspended for three years' unsupervised probation. [Petitioner] was ordered to pay a fine of $250.00 and to stay away from the North Carolina Arboretum and from a location known as Sandy Bottom.

The notice of hearing stated that information before the Commission tended to show that petitioner:

> [did] not possess the requisite trustworthiness, honesty, and integrity to engage in the business of a real estate salesman or otherwise hold the position of public trust and confidence which licensure as a real estate broker demands.

The notice further stated that petitioner had a "right to a hearing before the Commission to demonstrate why . . . [petitioner] possess[es] the requisite character for licensure."

At the hearing petitioner submitted three letters of reference, none of which were sworn affidavits. He also presented testimony from Louis Vernon Lee, a real estate broker who testified he had known petitioner for six months and had offered petitioner a position in his firm contingent on petitioner's obtaining a license.

Petitioner testified at the hearing that he had gone to a park area in Asheville and met a man he talked with briefly. Petitioner further testified that he and the man:

> agreed on a sexual incident and walked on to . . . another part of the area. There, immediately when we had gotten to this area, I reached out to touch the gentleman's shirt, and immediately he pulled out a gun and showed me his badge, identifying himself as a police vice squad officer.

Petitioner testified that he was then "photographed, booked and given a misdemeanor ticket[.]" Subsequently petitioner pled guilty to solicitation of crime against nature. He was given a suspended two-year sentence, fined $250.00, placed on unsupervised probation for

three years, and ordered to stay away from the park. Petitioner complied with these terms.

In its order entered on 8 July 1996, the North Carolina Real Estate Commission found as fact that the petitioner had "approached a man who until that time was unknown to him" at Sandy Bottom Park and "inquired of the man if he were a police officer and the man replied that he was not." The Commission further found that petitioner "invited the man to engage with him in a sex act" and accompanied the man to another public park "for the purpose of performing the sexual act." In addition to finding that the petitioner was convicted of the criminal offense of soliciting a crime against nature on 29 May 1991, the Commission found that "[a]t the time of the offense, [petitioner] knew Sandy Bottom as a place where men went to arrange sexual encounters with other men" and "had used the park for that purpose prior to the offense in question," even though he was "aware that Sandy Bottom and the North Carolina Arboretum were public places and were used by the general public for hiking and bicycle riding."

Based on these and other findings, the Commission concluded that petitioner "has failed to affirmatively demonstrate pursuant to 21 NCAC [N.C. Administrative Code] 58A.0501 that he possesses the integrity which licensure as a real estate salesman demands. [Petitioner] does not possess the requisite integrity for licensure as a real estate salesman under G.S. 93A-4(b)." Based on this conclusion the Commission denied petitioner's application.

Petitioner filed a petition for judicial review to the Buncombe County Superior Court alleging, in part, that:

(a) the Commission's conclusion of law that Petitioner [did] not possess the requisite character for licensure [was] not supported by its findings of fact, and [was] erroneous as a matter of law.

(b) The Commission's order fail[ed] to find as fact numerous relevant matters which [were] supported by substantial, material and competent evidence in view of the entire record. . . .

. . .

(d) The Commission's decision [was] arbitrary and capricious[.]

After conducting a hearing on 1 May 1997, the trial court ruled:

(1) The findings of fact contained in the Commission's final decision are fully supported by competent, material and substantial evidence in view of the entire record as a whole. The Commission's findings of fact are comprehensive and sufficiently contemplate those matters relevant to Petitioner's application for licensure which are supported by substantial evidence contained in the whole record. No further findings are required. . . .

(2) . . . [T]he Commission's decision is not affected by any error of law prejudicial to the rights of Petitioner. From the record before it and pursuant to its authority under N.C.G.S. § 93A-4(b) and 21 NCAC 58A .0501, the Commission could properly conclude as a matter of law that Petitioner failed to affirmatively demonstrate that he possesses the integrity which real estate licensure demands and that Petitioner does not possess the requisite integrity for licensure. . . .

(3) . . . The Commission committed no error when it considered Petitioner's conviction of solicitation to commit crime against nature when the Commission passed upon his moral character. . . .

(4) It is within the discretion of the Commission to decide the case of Petitioner's integrity, character and fitness for licensure on its own merits. . . . The Commission did not abuse its discretion when it denied Petitioner's application for a real estate license. The Commission's decision is not arbitrary and capricious and no substantial right of Petitioner has been violated.

Based on these conclusions of the Commission, the trial court affirmed the Commission's decision in its entirety in an order entered 10 June 1997. Petitioner appeals from the order of the trial court.

I.

Appellate review of a superior court order of an agency governed by the Administrative Procedure Act requires the appellate court to examine the trial court's order for errors of law. *ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997). "The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Id.*

## HODGKINS v. N.C. REAL ESTATE COMM'N

[130 N.C. App. 626 (1998)]

Petitioner argues that the Commission erroneously concluded that he did not possess the requisite character or integrity for licensure as a real estate salesman. Petitioner contends this conclusion is not supported by the Commission's findings of fact and is erroneous as a matter of law.

> The proper standard for the superior court's judicial review "depends upon the particular issues presented on appeal." When the petitioner "questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the 'whole record' test."

*Id.* (citations omitted). "Judicial review of whether an agency decision was based on an error of law requires a *de novo* review." *Dew v. State ex rel. N.C. Dept. of Motor Vehicles*, 127 N.C. App. 309, 310, 488 S.E.2d 836, 837 (1997).

We thus divide our discussion of petitioner's argument into two parts. First, we must conduct a *de novo* review of the superior court's order regarding its agency review for errors of law. Second, we must determine whether the trial court properly decided that the Commission's findings were supported by sufficient evidence.

II.

[1] Petitioner argues that the trial court erred in ruling that "[t]he Commission committed no error when it considered Petitioner's conviction of solicitation to commit crime against nature" to determine whether he possessed sufficient integrity to be licensed as a real estate agent. We disagree.

N.C. Gen. Stat. § 93A-4 (1994) governs the application procedures for persons "desiring to enter into business of and obtain a license as a real estate broker or real estate salesman[.]" N.C.G.S. § 93A-4(b) requires:

> Any person who files such application to the Commission in proper manner for a license as real estate broker or a license as real estate salesman shall be required to take an oral or written examination to determine his qualifications with due regard to the paramount interests of the public as to the *honesty, truthfulness, integrity and competency of the applicant.*

(Emphasis added).

This statute also authorizes the Commission to "make such investigation as it deems necessary into the ethical background of the applicant" and to deny an applicant a license if the Commission finds that the results of the examination and investigation are unsatisfactory to the Commission. N.C.G.S. § 93A-4(b). The Commission has promulgated a regulation which states that "[w]hen the moral character of an applicant is in question, action by the Commission will be deferred until the applicant has affirmatively demonstrated that he possesses the requisite truthfulness, honesty and integrity." 21 N.C.A.C. 58A.0501.

In *In re Elkins*, 308 N.C. 317, 323, 302 S.E.2d 215, 218, *reh'g denied*, 308 N.C. 681, 311 S.E.2d 590, *cert. denied*, 464 U.S. 995, 78 L. Ed. 2d 685 (1983), an applicant seeking to be licensed to practice law contended that "the [Board of Law Examiners] erred by using evidence of his criminal convictions" to determine if the applicant possessed the sufficient moral character for licensure. Our Supreme Court held that "evidence of criminal convictions has long been properly admitted and considered in hearings before boards of law examiners in this and other jurisdictions to determine an applicant's moral character." *Id. See also In re Moore*, 301 N.C. 634, 272 S.E.2d 826 (1981). We hold this evidence is properly considered by the North Carolina Real Estate Commission in reviewing applications, as "[t]here is involved in the relation of real estate broker and client a measure of trust analogous to that of an attorney at law to his client . . . ." *State v. Warren*, 252 N.C. 690, 695, 114 S.E.2d 660, 665 (1960) (noting that "the real estate business affects a substantial public interest and may be regulated for the purpose of protecting and promoting the general welfare of the people") (citations omitted).

In this case the Commission concluded as a matter of law that petitioner did "not possess the requisite *integrity* for licensure as a real estate salesman under G.S. 93A-4(b)." (Emphasis added). As the statute does not define "integrity," we are guided by the definition found in Black's Law Dictionary. *State v. Martin*, 7 N.C. App. 532, 533, 173 S.E.2d 47, 48 (1970) ("courts may, and often do, resort to dictionaries for assistance in determining the common and ordinary meaning of words and phrases"). Black's Law Dictionary defines "integrity" as synonymous with "soundness of moral principle and character, as shown by one person dealing with others in the making and performance of contracts . . . ." Black's Law Dictionary 809 (6th ed. 1990).

In this case, there is evidence of petitioner's intentional violation of the law. A person's tendency to abide by the law of the society in which he lives is a fair measure of that person's trustworthiness and honesty. Such proof of petitioner's failure to be a law-abiding citizen is therefore relevant to determine whether or not he possesses the character and integrity sufficient to be entrusted to "hold the position of public trust and confidence which licensure as a real estate broker demands."

We cannot agree with petitioner's arguments that: (1) his misdemeanor conviction pertained solely to his personal morals and not to anything involving his honesty or trustworthiness, and (2) that his conviction should not be considered by the Commission as relevant to his integrity or character. When such activity is conducted in public, in direct contravention of the law, resulting in a conviction for soliciting a crime against nature, such conduct becomes relevant to determine an applicant's integrity as it reflects on his willingness and ability to abide by the law. For these reasons, the Commission did not err by considering petitioner's previous criminal conviction in determining whether the petitioner "possess[ed] the requisite integrity for licensure as a real estate salesman under G.S. 93A-4(b)." Thus, we hold that the trial court did not err in concluding that "the Commission could properly conclude as a matter of law that Petitioner . . . does not possess the requisite integrity for licensure."

### III.

[2] Petitioner argues that his single conviction was insufficient by itself to support the denial of his application. Specifically, petitioner contends that the trial court erred in its finding that "[t]he Commission's findings of fact are comprehensive and sufficiently contemplate those matters relevant to Petitioner's application" such that "[n]o further findings are required" to support the denial of petitioner's application for licensure. We disagree. As petitioner is questioning whether the Commission's decision was supported by evidence, we must apply the "whole record test." N.C. Gen. Stat. § 150B-51 (1995); *ACT-UP Triangle* at 706, 483 S.E.2d at 392. "The 'whole record' test requires the reviewing court to examine all competent evidence . . . in order to determine whether the agency decision is supported by 'substantial evidence.'" *Id.* (citation omitted). "The evidence is substantial if, when considered as a whole, it is such that a reasonable person might accept as adequate to support a con-

clusion." *N.C. State Bar v. Maggiolo*, 124 N.C. App. 22, 26, 475 S.E.2d 727, 730 (1996). "The whole record test does not permit a reviewing court to replace the [Commission's] judgment as between two reasonably conflicting views, even though the Court may have justifiably reached a different decision." *Id.*

In this case, the trial court stated in its order that "in view of the entire record as a whole" the Commission's findings "are supported by substantial evidence contained in the whole record." Thus, we conclude that the trial court applied the "whole record test," the correct standard of review to determine the sufficiency of the evidence. We must now determine whether the scope of this review was exercised properly.

Our Supreme Court in *Elkins*, 308 N.C. at 321, 302 S.E.2d at 217, held that "[t]he applicant has the initial burden of proving his good character" in hearings before the Board of Law Examiners. *Id.* "If the Board relies on specific acts of misconduct to rebut this *prima facie* showing, and such acts are denied by the applicant, then the Board must establish the specific acts by the greater weight of the evidence." *Id.* In arguing that the Commission's findings were supported by insufficient evidence, petitioner erroneously relies on *In re Rogers*, 297 N.C. 48, 58, 253 S.E.2d 912, 918 (1979), wherein the Court stated that "[w]hether a person is of good moral character is seldom subject to proof by reference to one or two incidents." The Court's determination that the Board of Law Examiners had not conducted an adequate investigation was based on the Court's finding that the Board had not made any findings as to whether the applicant had committed the acts of which he was accused. *Id.* at 59-60, 253 S.E.2d at 919-20. The *Rogers* Court stated that the "Board could have found that Rogers had not shown his good moral character only if it believed he had done these [fraudulent] acts" and it was error for the Board to deny his application without first finding that he had committed the acts. *Id.* at 60, 253 S.E.2d at 920. In the case before us, the Commission made adequate findings as to whether the petitioner committed the acts leading to his conviction. Moreover, petitioner admitted he committed the acts in question. For this reason, *Rogers* does not apply in this case.

It was petitioner's burden, which he does not challenge on appeal, to demonstrate to the Commission "why [he] possess[ed] the requisite character for licensure." However, in support of his application, petitioner only submitted three brief unsworn letters of refer-

ence, the testimony of his potential employer based upon the latter's six months' acquaintance with petitioner, and petitioner's own testimony, *inter alia*, that he had been convicted of a criminal offense. The Commission's conclusions that: (1) petitioner failed to "affirmatively" meet his burden of demonstrating that he possessed the requisite integrity, and (2) that petitioner thereby lacked a prerequisite for licensure, are supported by the record.

Petitioner also contends that his case should be remanded for the trial court to consider "the evidence detracting from the Commission's position." We assume that the evidence to which petitioner refers was contained in the three reference letters or the sworn testimony of Lee, his potential employer. Initially, we note that these letters were not sworn affidavits. However, assuming that they were properly admitted into evidence, we hold that the trial court did not err by its failure to require that the Commission make findings as to the content of these letters or Lee's testimony. The Commission's order denying petitioner's application clearly focused on the facts leading to petitioner's criminal conviction. There is nothing in the record to indicate that the denial of the application was based on any other questions the Commission had in regard to petitioner's character. Factors such as petitioner's "licensure as a pharmacist, [evidence of] no civil judgments or liens, and [absence of a] criminal record save for one misdemeanor" may be relevant in the determination of an individual's character; however, the Commission's focus on the conviction did not constitute an abuse of the Commission's discretion, nor was the decision arbitrary and capricious.

We thus hold that the trial court did not err by affirming the Commission's decision denying petitioner's application.

Affirmed.

Judges JOHN and HORTON concur.