THE NORTH CAROLINA STATE BAR v. STEPHEN A. GRAVES

No. 8010NCSB491

(Filed 3 February 1981)

1. Attorneys at Law § 12— disciplinary action against attorney — sufficiency of evidence to support findings

The evidence supported findings by the Disciplinary Hearing Commission that defendant attorney, in representing a client charged with driving under the influence of alcohol, advised a potential State's witness that his client claimed that the potential witness was driving the car at the time in question, that defendant advised the potential witness either not to appear in court or to plead the Fifth Amendment, and that defendant told the potential witness that his client would not testify against the witness if the witness would not testify against his client.

2. Attorneys at Law § 12— unprofessional conduct — influencing potential adverse witness not to testify — constitutionality of disciplinary rules

Defendant attorney engaged in professional conduct prejudicial to the administration of justice and adversely reflecting upon his fitness to practice law in violation of Disciplinary Rules 1-102(A)(5) and (6) where the attorney, in representing a client charged with driving under the influence of alcohol, advised a potential adverse witness that his client claimed that the witness was driving the car at the time in question, told the witness that the State could not prove who was driving if both the witness and his client remained silent, advised the witness not to testify unless subpoenaed and to plead the Fifth Amendment if subpoenaed, and told the witness that his client would not give testimony which might incriminate the witness if the witness would not give incriminating testimony against his client. Furthermore, application of the Disciplinary Rules against defendant attorney in this case did not violate defendant's rights to due process and equal

State Bar v. Graves

protection.

**3. Attorneys at Law § 12— unprofessional conduct — public censure**

An order of public censure was not arbitrary and unreasonably harsh punishment for defendant attorney's unprofessional conduct in encouraging a potential adverse witness not to testify against his client in a prosecution for driving under the influence of alcohol in return for an agreement by the client not to give any testimony which might incriminate the potential witness.

**4. Attorneys at Law § 12— disciplinary hearing — evidence in mitigation of misconduct**

In a disciplinary hearing against an attorney, evidence tendered by defendant attorney purportedly in mitigation of the alleged misconduct was properly excluded since it was irrelevant to the question of whether defendant attorney engaged in misconduct, and since mitigating evidence would be admissible only after the charges of misconduct had been established.

APPEAL by defendant from an Order of the Disciplinary Hearing Commission of the North Carolina State Bar entered 16 January 1979. Heard in the Court of Appeals 13 November 1980.

Plaintiff instituted this action on 2 August 1979 seeking to have disciplinary action taken against defendant, a licensed attorney, for alleged misconduct in violation of plaintiff's Code of Professional Responsibility and of G.S. § 84-28(b)(2). In its complaint, plaintiff alleged that on or about 28 September 1978, defendant, while representing one Teresa Smith on a then-pending charge of driving under the influence of alcohol, approached one Luther Melton Guthrie, a potential State witness, and "attempted to influence him not to testify in said case, or, in the alternative if subpoenaed to give testimony, to go upon the stand but not to testify or to plead the Fifth Amendment to the United States Constitution." Plaintiff further alleged that on or about 12 October 1978, during a telephone conversation, defendant again advised Guthrie either to not testify or plead the Fifth Amendment, and also advised Guthrie that "if he would agree not to give incriminating testimony against Miss Smith, he, the defendant, would see that Miss Smith would not give testimony which might incriminate Mr. Guthrie." Plaintiff then alleged that defendant's conduct violated the Code of Professional Responsibility as it was (1) conduct involving moral turpitude, dishonesty, fraud, deceit, and misrepresentation, in violation of Disciplinary Rules 1-102(A)(3) and (4); (2) professional conduct prejudicial to the administration of justice and adversely reflecting upon his fitness to practice law, in violation of Disciplinary Rules 1-102(A)(5) and (6); (3) conduct by which defendant knowingly

attempted to use perjured or false testimony and attempted to create a false statement of fact, in violation of Disciplinary Rules 7-102(A)(4) and (5); and (4) conduct by which defendant participated in the creation and preservation of evidence when he knew the evidence was false, and counseled and assisted his client in conduct he knew to be illegal or fraudulent, in violation of Disciplinary Rules 7-102(A)(6) and (7). Defendant answered 28 August 1979 admitting that he was representing Miss Smith on a then-pending driving under the influence charge on or about 28 September 1978, but denying all allegations of misconduct.

After a hearing on 6 December 1979, the Disciplinary Hearing Commission made the following pertinent findings and conclusions:

3. During the month of September, 1978, and following, the defendant was representing Miss Teresa Smith (hereinafter referred to as "Smith") on a criminal charge of D.U.I. of alcohol pending in Beaufort County District Court. Miss Smith was charged with said crime following a one car accident involving Miss Smith's automobile, in which she and one Melton Guthrie (hereinafter referred to as "Guthrie") were injured. Miss Smith was arrested by Highway Patrolman R. L. Hawley at Pungo District Hospital, Belhaven, North Carolina shortly after the accident.

4. On September 28, 1978, the defendant went to a self-service gasoline station where he met Guthrie, who, at the time was an employee of the owner of said station.

5. While engaged in conversation, the defendant advised Guthrie that his client, Miss Smith claimed that she was not driving the car, but that Guthrie was. Guthrie told Graves that he was not driving. The defendant advised Guthrie that it would be her word against his. The defendant advised Guthrie that if he had not been subpoenaed to testify at Miss Smith's trial, to not say anything or plead the Fifth Amendment. The defendant also advised Guthrie that if he, Guthrie would not say anything against Miss Smith, then Miss Smith would not say anything against him. The defendant asked Guthrie to think about it and if he had any questions to call him.

6. Guthrie reported this conversation to Highway Patrolman Hawley shortly after it took place and Mr. Hawley in turn reported it to the District Attorney, William Griffin. Mr. Griffin sought the assistance of the S.B.I.

7. Agent Lewis Young of the S.B.I. met with Guthrie, took his statement and asked him if he, (Guthrie) would grant Young permission to electronically record a telephone conversation between Guthrie and the defendant. After permission was granted, and after two or more unsuccessful attempts, the defendant was reached by telephone on October 12, 1978 at approximately 9:30 a.m. This conversation was electronically recorded by Agent Young on equipment owned by the S.B.I. and operated by Mr. Young.

In conversation which ensued, Guthrie advised defendant that he had been subpoenaed and asked defendant what it was that he (defendant) wanted Guthrie to do. The defendant advised Guthrie that ". . . the best thing to do is just to get up there and say nothing.", "just say I take the Fifth Amendment, I don't have to answer." Later in the conversation, the defendant said, "they can't prove that she was driving, they can't prove you were driving, if both of you keep your mouth shut," and asked if Guthrie had an attorney, his answer was "no."

After Guthrie acknowledged that statement, the defendant stated, "Yeah, well, ah, you see I'm not going to let her testify against you if you don't testify against her." "Course, you've got more to lose in this than she does." The defendant's last remark was referring to the fact that Guthrie had previously lost his privilege to drive. Defendant then advised Guthrie to think the matter over and to call an attorney, whom he (defendant) had previously identified. With that, the conversation ended.

. . .

By contacting a potential State witness in a criminal case, and attempting to influence him with regard to his testimony and suggesting or requesting that he not tes-

tify, the defendant engaged in professional conduct that was prejudicial to the administration of justice and that adversely reflected upon his fitness to practice law, in violation of Disciplinary Rules 1-102(A)(5) and (6) of the Code of Professional Responsibility of The North Carolina State Bar.

From an order of public censure based on these findings and conclusions, defendant appealed.

*H. D. Coley, Jr., for the plaintiff appellee.*

*Johnson, Gamble, and Shearon, by Samuel H. Johnson, for the defendant appellant.*

HEDRICK, Judge.

[1]   By his first assignment of error, defendant contends that the Hearing Committee's Finding of Fact No. 5 was not supported by any competent evidence. We disagree. The record contains ample competent evidence that defendant advised Guthrie as indicated in the challenged finding. Guthrie testified that "Mr. Graves said to me that if they do subpoena me, then I should go and not say anything or plead the Fifth or just not show up for court." Guthrie further testified that during the taped telephone conversation, "he [defendant] told me that I should plead the Fifth and not say anything and that if I did not say anything, they wouldn't say anything against me." Guthrie also testified that "I believe Mr. Graves told me that if I wasn't subpoenaed I would not have to go to court. I told Officer Young that I had been told that if I had been subpoenaed, and I did go to court, I didn't have to say anything." Defendant himself testified that Guthrie and Smith had each denied being the driver of the car at the time of Smith's arrest, and that in talking with Guthrie, defendant said that "somebody wasn't telling the truth, and Mr. Guthrie agreed with that, that there could be only one person driving the car at the time of the accident." Defendant also admitted that he told Guthrie, "Well, I'm not going to let her testify against you if you won't testify against her."

Moreover, the recording of the telephone conversation, properly authenticated and admitted into evidence, contains the following exchange between defendant and Guthrie:

GUTHRIE: They've subpoenaed me for court. I was

wondering what you wanted me to do.

GRAVES: Well, Melton, it's kind of like this. I don't know who is telling the truth about it or not. I don't know. She said you were driving. You say she was driving. If you were driving, of course, they can't make you get up on the stand and say that you were.

GUTHRIE: Yes.

GRAVES: So the best thing to do is to get up there and say nothing.

GUTHRIE: Uh-huh (yes).

GRAVES: Just say, "I take the Fifth Amendment. I don't have to answer." You can see an attorney. Who is normally your attorney.

GUTHRIE: I ain't got no one in particular.

GRAVES: How about Jim Vosburgh? You could just call him up on the phone or see him over there and kind of explain the situation to him.

GUTHRIE: In other words, you want more or less what you were talking to me about today, right?

GRAVES: Yes.

GUTHRIE: Yes, I haven't ever called an attorney or nothing.

GRAVES: You see, Melton, they can't prove who was driving.

GUTHRIE: Uh-huh (yes).

GRAVES: They can't prove that she was driving. They can't prove that you were driving if both of you keep your mouths shut.

GUTHRIE: Okay, well, I ain't fully made up my mind yet, but I thought I'd call you being they'd subpoenaed me and everything.

GRAVES: Yes, well, see, I'm not going to let her testify against you, if you won't testify against her.

GUTHRIE: Uh-huh (yes).

GRAVES: Of course, you've got more to lose in this than she does.

GUTHRIE: Yes.

GRAVES: Because you have lost your license already, haven't you?

GUTHRIE: Uh-huh (yes).

GRAVES: You think it over, Melton, and contact Jim Vosburgh if you've got any doubts about it.

GUTHRIE: Okay, thank you, sir.

GRAVES: Bye.

Since the challenged finding is supported by competent evidence, that finding is binding on this Court, *North Carolina State Bar v. Combs*, 44 N.C. App. 447, 261 S.E.2d 207 (1980), and thus this assignment of error is without merit.

Defendant next contends, based upon his second assignment of error, that the Hearing Committee erred in making Finding of Fact No. 7 because statements attributed to defendant in that finding were removed from "their clear and unmistakably innocent context." After careful examination of the transcript of the recorded conversation, as quoted above, we are of the view, however, that the finding contains a sufficiently adequate summary of the material portions of the conversation, and that no statements were taken out of context. This assignment of error is meritless.

**[2]** By his third assignment of error, defendant contends that the Hearing Committee's findings do not support its conclusion that defendant violated Disciplinary Rules 1-102(A)(5) and (6) of the Code of Professional Responsibility. Defendant makes the following arguments: (1) advising Guthrie to plead the Fifth Amendment if subpoenaed to testify or not to appear in court if not subpoenaed is ethical; (2) the cited Disciplinary Rules are not applicable to defendant's conduct; and (3) the cited Disciplinary Rules are unconstitutional as applied to defendant under the Due Process Clauses and the Equal Protection Clauses of the United States Constitution and the North Carolina Constitution. We disagree.

The Disciplinary Rules in question provide as follows:

(A) A lawyer shall not:

. . .

    (5) Engage in professional conduct that is prejudicial to the administration of justice.

    (6) Engage in any other professional conduct that adversely reflects on his fitness to practice law.

In the ordinary situation, telling a potential witness to plead the Fifth Amendment if subpoenaed, or to not appear in court if not subpoenaed, would not seem to be unethical. Certainly no disciplinary rule prevents the attorney from informing a potential witness as to his legal alternatives under the circumstances. In this case, however, the evidence tended to show that defendant did not simply inform Guthrie as to his legal rights to plead the Fifth Amendment and not to appear in court unless subpoenaed; defendant also attempted to influence Guthrie, a potential adverse witness, not to testify in order to prevent Miss Smith from being found the driver of the vehicle. By convincing Guthrie and Smith not to testify against each other, defendant would frustrate any prosecution of the case, as relevant evidence as to the identity of the driver would be hidden from view. Conduct by an attorney in influencing a potential witness not to testify by which relevant and material evidence is knowingly concealed at trial has been considered unethical. *See* 40 A.L.R.3d 169. In our view, intentionally encouraging the concealment of material facts relevant to the identity of the driver in a driving under the influence prosecution is prejudicial to the administration of justice, and since such conduct raises serious doubts about defendant's desire to bring about a just result in such a prosecution, we think this conduct adversely reflects upon defendant's fitness to practice law.

    Defendant's argument as to the constitutionality of the cited Disciplinary Rules as applied to this case is likewise without merit. Citing *Bazemore v. Board of Elections,* 254 N.C. 398, 119 S.E.2d 637 (1961) for the proposition that a provision valid on its face may nonetheless be unconstitutional in its application to the particular case if the provision is administered in an arbitrary or discriminatory manner, defendant argues that the disciplinary rules were arbitrarily applied in this case, since defendant was not put on sufficient notice that his conduct would be unethical. While we agree with defendant's interpretation of *Bazemore v. Board of Elec-*

*tions, supra,* we disagree that the cited Disciplinary Rules were arbitrarily applied in the present case. Defendant should have known that encouraging a potential adverse witness not to testify would result in hinderance of the proper prosecution of the client's case. Based on any set of evidence similar to that presented at the hearing, one could properly conclude that defendant's actions would indeed be prejudicial to the administration of justice and would adversely reflect on defendant's fitness to practice law. This assignment of error is thus meritless.

**[3]** Defendant's fourth assignment of error relates to the Hearing Committee's order of public censure. Defendant contends that the order was arbitrary and unreasonably harsh punishment under the circumstances of this case. We do not agree. In the present case, defendant's conduct was determined to be in violation of the North Carolina Code of Professional Responsibility and thus was "misconduct" as defined in G.S. § 84-28(b). Subsection (c) of that section sets forth the various punishments, differing in severity, that can be ordered by the Hearing Committee for misconduct as defined in subsection (b): (1) disbarment; (2) suspension for a period not exceeding three years; (3) public censure; or (4) private reprimand. The punishment ordered for defendant in this case ranks third in terms of severity, and essentially differs from the least severe censure only in that it is a public, rather than private, reprimand. Under the circumstances of this case, defendant was a licensed attorney with four years' practicing experience. Whatever lack of overall experience he might have had from this relatively short period of time was offset by the "sink or swim" method of training to which he was subjected by his former associate, Mr. Scott. Defendant had practiced solely in the Washington, North Carolina, area in a trial practice principally involved with criminal law. The evidence at the hearing before the Hearing Committee tended to show that in representing a client, a client he had represented on prior occasions, in a pending criminal prosecution, defendant approached a potential adverse witness in an attempt to influence him not to testify against his client in exchange for the client's not testifying against the witness. We believe the order of public censure was proper in this case. This assignment of error is without merit.

**[4]** Defendant's seventh assignment of error is addressed to the court's exclusion of evidence tendered by defendant that would purportedly have been in mitigation of the alleged misconduct and

would have shown defendant's real intent. Defendant argues that he should have been allowed to testify to the following: (1) that Miss Smith had told him that she had not had any prior driving under the influence charges; (2) the reasons defendant believed Guthrie had admitted that he was driving the vehicle at the time of the accident; and (3) defendant's knowledge of Guthrie's criminal record at the time he investigated the accident. We do not agree. Defendant cites in support of his contention Article IX, § 14(19) of the Rules, Regulations, and Organization of the North Carolnia State Bar, which provides:

> If the charges of misconduct are established, the Hearing Committee shall then consider any evidence relevant to the discipline to be imposed, including the record of all previous misconduct for which the defendant has been disciplined in this State or any other jurisdiction and any evidence in mitigation of the offense. A summary of this evidence shall accompany the transcript of the hearing.

This subsection, however, refers to proceedings *after* any charges of misconduct have been established; in the present case, defendant sought the introduction of the excluded evidence *before* any misconduct had been determined by the Hearing Committee, and the record contains nothing as to any attempted introduction of mitigating evidence after the determination of misconduct.

The admissibility of the excluded testimony is thus governed by subsection (17) of § 14, which in pertinent part provides: "In any hearing admissibility of evidence shall be governed by the rules of evidence applicable in the superior courts of the State at the time of the hearing." Under those rules, the excluded evidence was irrelevant to the question of whether defendant engaged in misconduct, and the Hearing Committee properly denied its admission. This assignment of error is without merit.

We have reviewed defendant's remaining assignments of error and find them to be without merit.

Affirmed.

Judges CLARK and WHICHARD concur.