STATE OF NORTH CAROLINA v. JAMES DAVID SINGLETARY

No. 841SC1067

(Filed 2 July 1985)

1. **Criminal Law §§ 62, 75 — statements to polygraph operator during post-test interview**

   The decision holding that the results of a polygraph test are no longer admissible in evidence, *State v. Grier*, 307 N.C. 628 (1983), did not preclude the admission of statements made by defendant to the polygraph operator during the post-test interview.

2. **Criminal Law §§ 75, 75.7 — post-test statements to polygraph operator — no custodial interrogation — voluntariness**

   Incriminating statements made by defendant to a polygraph operator during a post-test interview were not the result of custodial interrogation where defendant had requested the time, place and operator of the polygraph test, defendant realized he was free to leave at any time, and defendant was not arrested until two weeks after the interview. Furthermore, defendant's statements were made voluntarily and understandingly notwithstanding defendant, an attorney, contended that at the time he made the statements he believed that the decision of *State v. Grier*, 307 N.C. 628 (1983), prohibited the admission of all statements having any connection with a polygraph test.

**3. Criminal Law § 169.3— evidence admitted over objection—similar evidence admitted without objection**

When evidence is admitted over objection but the same evidence has theretofore or thereafter been admitted without objection, the benefit of the objection is ordinarily lost.

**4. Criminal Law § 33— business involvement with codefendants—relevancy**

In a prosecution for various crimes related to the burning of an uninhabited dwelling, testimony that defendant set up a corporation to manufacture firearms was relevant to show defendant's business involvements with some of his codefendants.

**5. Criminal Law § 39— scope of rebuttal testimony**

Defendant failed to show prejudice by testimony of rebuttal witnesses which went beyond the scope of rebuttal.

**6. Constitutional Law § 30— motion to obtain evidence—failure to make findings—harmless error**

Even if the trial court was required to make detailed findings of fact in denying defendant's motion to obtain statements of the defendant and certain other information, defendant failed to show that the trial court's failure to do so was prejudicial.

APPEAL by defendant from *Peel, Jr., Judge*. Judgment entered 26 March 1984 in Superior Court, CHOWAN County. Heard in the Court of Appeals 4 April 1985.

Defendant, a licensed practicing attorney, was convicted of (i) burning an uninhabited house, (ii) conspiracy to burn an uninhabited house, (iii) fraudulently burning a building designed or intended as a dwelling house, and (iv) conspiracy to fraudulently burn a building designed or intended as a dwelling house. Defendant received an active sentence and was disbarred from the practice of law. Defendant appealed.

*Attorney General Edmisten by Assistant Attorney General Joan H. Byers and Assistant Attorney General Charles H. Hobgood for the State.*

*Pritchett, Cooke & Burch by Stephen R. Burch for defendant-appellant.*

PARKER, Judge.

[1] In his first assignment of error, defendant challenges the trial court's refusal to suppress certain incriminating statements made immediately following a polygraph test administered to him

by SBI Agent William Godley, after the machine had been turned off. Defendant makes a twofold argument in this regard. First, defendant contends that pursuant to the decision of our Supreme Court in *State v. Grier*, 307 N.C. 628, 300 S.E. 2d 351 (1983), all evidence obtained during a polygraph test can no longer be introduced into evidence, including evidence obtained during the "post-test interview." Secondly, defendant contends that even if these statements are admissible under the *Grier* decision, they should have been suppressed because they were not in fact voluntarily and understandingly made. We disagree with both of these contentions for the reasons stated herein.

In *Grier, supra*, our Supreme Court held that polygraph evidence is no longer admissible in any civil or criminal trial, even though the parties stipulate to its admissibility. *Id.* at 645, 300 S.E. 2d at 361. It is clear that the decision was grounded on the sensitive interrelationship between the reliability of the examiner in interpreting the results and the reliability of the machine itself. *Id.* at 636, 300 S.E. 2d at 355-56. The Court stated:

> We hasten to note that in these cases permitting polygraph evidence upon stipulation of the parties, we have not implicitly recognized the reliability of the polygraph technique. Admissibility of this evidence has not been based on the validity and accuracy of the lie detector, but rather that by consenting to the evidence pursuant to stipulation, the parties have waived any objections to the inherent unreliability of the test. *Id.* at 640, 300 S.E. 2d at 358.

The Court also was "disturbed by the possibility that the jury may be unduly persuaded by the polygraph evidence." *Id.* at 643, 300 S.E. 2d at 360.

The *Grier* court outlined the three step process involved in a polygraph examination as follows: "The examiner conducts a pretest interview, prepares the test questions and asks them during the examination, supervises the examinee's behavior during the examination, conducts a post-test interview and, finally, interprets the test results." *Id.* at 636, 300 S.E. 2d at 356. Defendant contends that any information elicited during any of the three phases is automatically inadmissible under the *Grier* decision.

In our view when our Supreme Court held that "polygraph evidence" is no longer admissible, they meant that all evidence

concerning whether or not, in the operator's opinion, the defendant was being deceptive, is to be excluded. Our conclusion is supported by the Supreme Court's stated and above-quoted concern about the reliability of the machine itself and the reliability of the examiner in interpreting these results. Therefore, because the statements introduced in the case before us were not based on the examiner's interpretation of the polygraph tests results, we hold the court did not err in refusing to suppress these statements under the *Grier* rule.

Having concluded that the statements were not inadmissible solely because of the *Grier* decision, we must now determine whether the statements were admissible as a confession. Our Supreme Court, in *State v. Stephens*, 300 N.C. 321, 266 S.E. 2d 588 (1980), restated the well established rules regarding confessions as follows:

> The test of admissibility is whether the statements made by defendant were in fact voluntarily and understandingly made. Admissibility depends upon whether the statement was freely and voluntarily made and whether the officers who elicited the statement employed appropriate procedural safeguards. A confession or incriminating statement is voluntary in law when, and only when, it is in fact voluntarily made. The question of voluntariness must be determined by the total circumstances of each particular case. Although *Miranda* warnings are required only when defendant is being subjected to *custodial* interrogation, and are not required during the investigatory stage when defendant is not in custody at the time he makes the statement, all *involuntary* confessions or incriminating statements, made in custody or out, are ordinarily inadmissible for any purpose. (Citations omitted.)

The challenged statements must be examined in light of these legal principles to determine their admissibility.

[2]  First, we reject defendant's contention that he was subjected to custodial interrogation at the time the statements were made. Not only did the defendant request the time and place of the test (the Sheriff's private office), the examination was given by the Agent defendant requested to do the examination. Also, the trial court found as a fact, which we think was supported by compe-

tent evidence, that defendant realized he was free to leave at any time. Defendant was not in fact arrested until two weeks after the interview. When these factual circumstances are coupled with the fact, as found by the trial court, that defendant, who was familiar with polygraph release forms, signed the release form, which contains *Miranda* warnings, both before and after the interview, we are satisfied that the statements were voluntarily made under the totality of these circumstances.

Defendant contends that these statements were not understandingly made. His argument is that he had read the *Grier* decision prior to taking the polygraph examination, and that he interpreted that decision to mean that all statements having any connection with a polygraph examination would be automatically inadmissible. At the motion to suppress hearing, the court made the following finding of fact:

> 15. That the District Attorney Williams did not tell the defendant he would be indicted if he did not take the polygraph test, but Mr. Williams discussed with the defendant that the polygraph results would not be admissible; that neither Mr. Godley nor Mr. Williams told the defendant that any evidence that might arise during the polygraph would not be admissible; that Mr. Godley specifically told the defendant that the test results would not be admissible, but that the *Grier* case would not effect any statements made during the testing; that if the defendant was of the opinion that any voluntary statements made during the test would not be admissible solely because of the fact that the polygraph was involved, that it was of his own doing and not because of anything told to him by the officer or the district attorney;

This finding, which was supported by competent evidence, is binding upon us on this appeal. *State v. Jackson*, 306 N.C. 642, 295 S.E. 2d 383 (1982). Therefore, under the totality of these circumstances, the trial court did not err in refusing to suppress the incriminating statements solely because a polygraph machine was involved. The assignment of error is overruled.

[3] In his second assignment of error, defendant contends the court erred in allowing testimony as to unrelated crimes of which the defendant had been accused, but not convicted. Defendant's

argument is without merit. A co-defendant, Luckie Cartwright, and Agent Godley both testified that defendant loaned money to Cartwright to finance drug deals before defendant began objecting to this evidence. When evidence is admitted over objection, but the same evidence has theretofore or thereafter been admitted without objection, the benefit of the objection is ordinarily lost. *King v. Demo*, 40 N.C. App. 661, 253 S.E. 2d 616 (1979). Therefore, the assignment of error is overruled.

[4] In his third assignment of error, defendant contends the court erred in admitting highly prejudicial evidence unrelated to the offense with which he was charged. The court admitted testimony that defendant set up a corporation to manufacture firearms. There being nothing illegal about such a corporation, this evidence was relevant on the issue of defendant's business involvements with some of his co-defendants.

On cross-examination, defendant denied that he thought the family of one of his co-defendants was involved in drug trafficking. Police Chief Merritt was called by the State to rebut this testimony and his testimony was, therefore, clearly relevant. This testimony was also relevant as to defendant's knowledge of the criminal activities of some of his co-defendants. The assignment of error is overruled.

[5] In his fourth assignment of error, defendant contends the court erred by allowing rebuttal witnesses to go beyond the scope of rebuttal testimony, thereby giving the State a chance to present its case twice with defendant's case sandwiched in between.

The burden is on the defendant to prove that there is a reasonable possibility that a different result would have occurred had the court not committed error. *State v. Armistead*, 54 N.C. App. 358, 283 S.E. 2d 162 (1981). Defendant has failed to carry his burden in this regard, and the assignment of error is overruled.

[6] In his last assignment of error, defendant contends the court erred in failing to order an in-camera inspection after defendant filed a motion to obtain statements of the defendant and for certain other specific information. The court found "after looking at the file that there was nothing . . ." and denied the motion. Even assuming the court was required to make detailed findings of fact, defendant has failed to carry his burden of proving that this con-

**State v. Singletary**

stituted prejudicial error. *State v. Armistead, supra.* The assignment of error is overruled.

We find that defendant received a fair trial free from prejudicial error.

No error.

Judges WEBB and BECTON concur.