THE NORTH CAROLINA STATE BAR v. ROBERT M. TALFORD, ATTORNEY

No. COA00-952

(Filed 18 December 2001)

### 1. Attorneys— discipline by State Bar—appeal—standards

The State Bar's discipline of attorneys is governed by N.C.G.S. § 84-28, with the standard of proof in disciplinary and disbarment proceedings being clear, cogent, and convincing evidence. A finding of misconduct allows the Disciplinary Hearing Commission of the State Bar to impose sanctions which include

admonition, private reprimand, public censure, suspension of law license, or disbarment. Appellate review of State Bar orders is under N.C.G.S. § 84-28(h), which allows appeal on matters of law and legal inference. The appellate court does not sit as fact-finder and may only review for abuse of discretion where no issue of legal interpretation is raised, and the review is under the whole record test. In this case, the appellate court must determine whether the DHC's findings were supported by substantial evidence in the whole record, whether its findings support its conclusions of law, and whether the DHC abused its discretion in ordering defendant disbarred.

**2. Attorneys— mismanagement of trust account—sufficiency of evidence**

There was sufficient evidence for the Disciplinary Hearing Commission of the State Bar to conclude that defendant violated N.C. Revised Rules of Professional Conduct 1.15, which deals with trust accounts, where defendant testified that he did not reconcile his trust account, had not maintained accounting records, had commingled his own and his clients' money, had not always deposited settlement checks or paid creditors promptly, that there was money in his trust account of unknown origin, and that he had not escheated any of this money to this State.

**3. Attorneys— trust account—management grossly negligent**

An assignment of error to a State Bar Disciplinary Hearing Commission conclusion that defendant was grossly negligent in managing his trust account was overruled because the conclusion provided no independent basis for imposition of sanctions and there was substantial evidence that defendant violated the Rules of Professional Conduct.

**4. Attorneys— disbarment—mismanagement of trust account**

The Disciplinary Hearing Commission of the State Bar abused its discretion by disbarring an attorney who mismanaged his trust account where there were no findings or conclusions that established that any individual client was harmed, defendant's violations of the Rules of Professional Conduct did not evince an intent to defraud the court and did not affect proceedings in court, and the DHC's order made no findings that the defendant's actions threatened harm to the legal profession or to the administration of justice. No reported cases similar to this were found

in which an attorney was disbarred and lesser sanctions have been imposed for far more serious conduct.

Appeal by defendant from order entered 14 March 2000 by the North Carolina State Bar Disciplinary Hearing Commission in Wake County. Heard in the Court of Appeals 6 June 2001.

*Clayton W. Davidson, III and Carolin Bakewell for plaintiff-appellee.*

*Irving Joyner for defendant-appellant.*

BIGGS, Judge.

Robert M. Talford (defendant) appeals from an order entered by the Disciplinary Hearing Commission of the North Carolina State Bar (DHC) disbarring him from the practice of law. We affirm in part, and reverse and remand in part.

Defendant practiced law for over twenty years in the Charlotte area, having received a license to practice in 1976. His practice focused primarily on the representation of plaintiffs who filed claims for disability settlements such as workers' compensation, social security disability, and medical claims arising from accidents. Defendant operated his practice from a small house in Charlotte, and had no permanent employees. He had maintained a trust account since 1978. In 1998, the North Carolina State Bar (State Bar) audited defendant's trust account, and discovered discrepancies and irregularities in his bookkeeping practices.

On 19 October 1999 the State Bar filed a complaint against defendant, alleging the following misconduct:

1. That defendant failed to reconcile his trust account at least quarterly;

2. That defendant failed to maintain adequate records to determine whose funds were deposited into the account;

3. That defendant commingled his own funds with client funds;

4. That defendant was paying office expenses and personal expenses from the trust account in order to avoid having the funds seized by the Internal Revenue Service;

5. That defendant appropriated to his own use funds received in a fiduciary capacity, thus committing a criminal act re-

flecting adversely on his honesty, trustworthiness, and fitness as a lawyer;

6. That defendant entered into an unfair business transaction with a client;

7. That defendant engaged in willful attempts to evade or defeat payment of federal taxes, behavior involving dishonesty, fraud, deceit, or misrepresentation;

8. That defendant overpaid himself attorney's fees;

9. That defendant disbursed payment of client settlements before the settlement checks were received;

10. That defendant failed to pay certain of his clients' medical fees in a timely manner;

11. That defendant appropriated client funds to his own use; and

12. That defendant was grossly negligent in the management of his trust account, and benefitted from his own gross negligence.

At a hearing before the DHC on 25 February 2000, Edward White (White), an investigator with the State Bar, testified concerning his investigation of defendant's record keeping and accounting habits. White testified about defendant's business records in relation to some ten to fifteen clients. This evidence established that defendant had not maintained a financial ledger or other written record of his income and expenses, and had not reconciled his trust account on a quarterly basis, as required by North Carolina Revised Rules of Professional Conduct 1.15-1 and 1.15-2. White began his audit with defendant's records for 1994, at which time defendant's trust account balance was approximately $37,000. Defendant's records did not document the source of all of this money, nor whether any of this amount was owed to someone else. White termed this money "unidentified funds."

Defendant testified that none of his clients had ever claimed any of the "unidentified" funds in his trust account, that all his clients had been paid what was due to them, and that he had never misappropriated any client's funds. He contended that it was necessary to have some of his own money in the trust account to avoid bank charges, and prevent any checks from being returned for insufficient funds. Defendant acknowledged failing to regularly reconcile his trust account, but testified that he kept a sufficient "visual reconciliation"

to make this unnecessary. Defendant also conceded that he did not maintain a ledger or other written records for his trust account. He offered explanations for some of the bookkeeping discrepancies, but was unable to account for many of them.

The State Bar did not present evidence that any client or creditor had complained to the State Bar about defendant, nor that any client had failed to receive monies owed to him.

The DHC issued an order on 14 March 2000. Of the allegations in the complaint summarized above, the DHC dismissed numbers four, five, six, and seven, finding that they were not proven by clear, cogent, and convincing evidence. The allegations dismissed were those that alleged misappropriation of client funds; commission of criminal acts; conduct involving dishonesty, fraud, deceit, or misrepresentation; involvement in an unfair business transaction; and attempted evasion of federal income tax liability.

The DHC made extensive findings of fact regarding defendant's representation of twelve of his prior clients. The DHC's findings of fact were similar for each of these clients, and may be generally summarized as follows:

1. In 1994, defendant had approximately $37,000 in his trust account, for which he could identify neither the source nor the appropriate disposition of the money. These unidentified funds were never escheated to the State.

2. Defendant had on several occasions written checks attributable to expenses for a case prior to depositing a settlement check in the case, or for cases in which he never received a settlement check.

3. Defendant had on several occasions written checks attributable to his fees in a case, in excess of the amount that could be documented as owing to him for the settlement.

4. Defendant had several times been very dilatory in paying medical providers, on occasion delaying over a year after receipt of a settlement check in the case.

5. Defendant had on several occasions failed to deposit a settlement check into his trust account.

6. Defendant had written checks from the trust account attributable to a case in which he had been hired to perform legal

research and writing, and for which no settlement check would be received.

The DHC also found that defendant generally had been grossly negligent in the management of his trust account and had benefitted from his own gross negligence. The DHC concluded that defendant's acts and omissions were in violation of the Rules of Professional Conduct in that he:

> (1)  failed to maintain proper trust account records in violation of N.C. Revised Rules of Professional Conduct 1.15-1 and 1.15-2 (and superceded Rules 10.1 and 10.2); and
>
> (2)  failed to preserve funds in a fiduciary capacity, failed to deposit trust funds into trust account when received, failed to properly disburse funds, failed to reconcile his trust account at least quarterly, and commingled client and personal funds, in violation of N.C. Revised Rules of Professional Conduct 1.15-1 and 1.15-2 (and superceded Rules 10.1 and 10.2).

The DHC further concluded that the defendant's "acts and omissions set forth herein were grossly negligent and committed in reckless disregard of his obligations under the [Rules of Professional Conduct.]"

In the dispositional part of its order, the DHC found several factors that aggravated defendant's violation of the Rules of Professional Conduct, including: (1) a pattern of misconduct, (2) the commission of multiple offenses, (3) a refusal to acknowledge the wrongfulness of his actions, (4) substantial experience in the practice of law, and (5) defendant's apparent indifference to determining the ownership of the "unidentified" funds and making any restitution that was owed. The DHC found as a mitigating factor that the defendant had no previous disciplinary record. The DHC concluded that the aggravating factors outweighed the mitigating factor, and ordered the defendant disbarred. From this order, defendant appeals.

## I.

**[1]** We first review the law generally applicable to an appeal from a DHC order. The State Bar's discipline of attorneys is governed by N.C.G.S. § 84-28, which authorizes the State Bar to impose sanctions on attorneys who have engaged in acts constituting "misconduct." The statute defines misconduct to include (1) conviction of offenses showing professional unfitness, (2) violation of the N.C. Rules of

**N.C. STATE BAR v. TALFORD**

[147 N.C. App. 581 (2001)]

Professional Conduct, and (3) misrepresentation or evasion in response to a State Bar inquiry or complaint.

The standard of proof in disciplinary and disbarment proceedings is clear, cogent, and convincing evidence. 27 NCAC 1.0114(u). *See In re Palmer*, 296 N.C. 638, 252 S.E.2d 784 (1979) (adopting standard); *N.C. State Bar v. Beaman*, 100 N.C. App. 677, 398 S.E.2d 68 (1990). "Clear, cogent, and convincing" is an evidentiary standard that is stricter than "preponderance of the evidence," although not as high as the criminal burden of proof, "beyond a reasonable doubt." *In re Montgomery*, 311 N.C. 101, 316 S.E.2d 246 (1984). "Clear, cogent, and convincing" evidence is "evidence which should fully convince." *Williams v. Building and Loan Assn*, 207 N.C. 362, 177 S.E. 176 (1934).

In the present case, discipline was based upon the State Bar's finding that defendant had violated certain Rules of Professional Conduct. A finding of misconduct allows the DHC to impose sanctions, which include admonition, private reprimand, public censure, suspension of law license, or disbarment.

Appellate review of State Bar orders is authorized under N.C.G.S. § 84-28(h) which provides that:

> There shall be an appeal of right from any final order imposing admonition, reprimand, censure, suspension, stayed suspension, or disbarment upon an attorney. . . . Review by the appellate division shall be upon matters of law or legal inference. The procedures governing any appeal shall be as provided by statute or court rule for appeals in civil cases. . . .

Appeal is thus allowed "on matters of law and legal inference," which is the generally established basis of appeals from a trier of fact. *See e.g.*, N.C.G.S. § 7A-26, (North Carolina Supreme Court and Court of Appeals have jurisdiction to review "matters of law or legal inference"); N.C.G.S. § 1-277, (granting appeal from district and superior court upon orders and judgments "involving a matter of law or legal inference"); N.C. Const. Art. IV, § 12 (the jurisdiction of appellate courts is generally limited to issues of "law or legal inference," while the superior court has "original general jurisdiction" except as otherwise provided by statute).

This Court does not sit as a fact-finder, and does not take new evidence or make new findings of fact. *Lamm v. Lorbacher*, 235 N.C.

728, 71 S.E.2d 49 (1952) (facts are those found by jury); *N.C. State Bar v. Speckman,* 87 N.C. App. 116, 360 S.E.2d 129 (1987) (factual findings of DHC conclusive on appeal if supported by substantial evidence). Where no issue of legal interpretation is raised, we may review only for abuse of discretion. *Smith v. Beaufort County Hosp. Ass'n,* 141 N.C. App. 203, 540 S.E.2d 775 (2000); *Kinsey v. Spann,* 139 N.C. App. 370, 533 S.E.2d 487 (2000). A ruling committed to the fact finder's discretion is to be accorded great deference, and "[a]n abuse of discretion occurs only when a court makes a patently arbitrary decision, manifestly unsupported by reason." *Buford v. General Motors Corp.,* 339 N.C. 396, 406, 451 S.E.2d 293, 298 (1994).

This Court's review of the record in appeals from a DHC order is conducted under the whole record test. *N.C. State Bar v. Dumont,* 304 N.C. 627, 286 S.E.2d 89 (1982) (adopting standard); *N.C. State Bar v. Maggiolo,* 124 N.C. App. 22, 475 S.E.2d 727 (1996). In *N.C. State Bar v. Speckman,* 87 N.C. App. 116, 119-20, 360 S.E.2d 129, 132 (1987), this Court summarized the whole record standard as applied to appeals from a DHC order:

> In attorney discipline and disbarment proceedings, findings of fact must be supported by clear, cogent, and convincing evidence drawn from the whole record. The "whole record test" is the standard for judicial review of attorney discipline cases and requires the reviewing court to consider the evidence which in and of itself justifies or supports the administrative findings and . . . also [to] take into account the contradictory evidence or evidence from which conflicting inferences can be drawn. . . . Under the whole record test there must be substantial evidence to support the findings, conclusions and result. . . . The evidence is substantial if, when considered as a whole, it is such that a reasonable person might accept as adequate to support a conclusion. (citations omitted).

"Substantial evidence is 'more than a scintilla' and is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Williams v. Dept. of Env. and Natural Res.,* 144 N.C. App. 479, 483, 548 S.E.2d 793, 796 (2001) (citations omitted). Although the whole record test requires this Court to consider all the evidence in the record, it does not allow the Court to substitute its judgment for that of the DHC, even if the evidence is conflicting, and the Court might have reached a different conclusion. *North Carolina State Bar v. Nelson,* 107 N.C. App. 543, 421 S.E.2d 163 (1992).

In sum, this Court must determine whether the DHC's findings were supported by substantial evidence in view of the whole record; whether its findings support its conclusions of law; and whether the DHC abused its discretion in ordering defendant disbarred.

## II.

**[2]** Defendant argues first the State Bar presented insufficient evidence to support its findings of fact and conclusion that he had violated the Rules of Professional Conduct. We disagree.

The DHC found that defendant had violated N.C. Revised Rules of Professional Conduct 1.15. This Rule requires, in pertinent part, that an attorney: (1) Keep clients' money segregated in a trust fund; (2) Deposit all settlement checks and other entrusted funds into the trust account promptly upon receipt; (3) Not commingle funds of the attorney in the trust account with client funds; (4) Maintain current, accurate, bookkeeping records, including quarterly reconciliation of the trust account, a ledger, and retention of receipts, canceled checks, and other documentation for the trust account; and (6) Escheat abandoned funds to the State.

The defendant testified during the hearing that he did not reconcile his trust account; that he had not maintained accounting records; that he had commingled his and his clients' money; that he had not always deposited settlement checks or paid creditors promptly; that there was money in his trust account whose origin he could not establish; and that he had not escheated any of this money to the State. We find that defendant's own testimony, in conjunction with that of White, amply established by clear, cogent, and convincing evidence that defendant was in violation of Rule 1.15 of the Rules of Professional Conduct. This assignment of error is without merit.

## III.

**[3]** Defendant argues also that the State Bar failed to demonstrate by clear, cogent, and convincing evidence that he was grossly negligent in managing his trust account. The DHC specifically found that defendant had been grossly negligent in the management of his trust account, and that he had benefitted from his own gross negligence. Defendant correctly points out that the term "gross negligence" is not defined in the Rules of Professional Conduct or in the relevant statutes; that the DHC did not define the standard it was employing in its determination that defendant had been grossly negligent; and that

the record fails to establish what definition or standard was applied to the term "gross negligence." While this is true, we do not find it dispositive on the issue of whether a violation of the Rules of Professional Conduct occurred. DHC's conclusion that defendant was "grossly negligent" provides no independent basis for imposition of sanctions. In that we have concluded that there is substantial evidence that defendant violated the Rules of Professional Conduct, we overrule this assignment of error. However, we also note that the order fails to set forth what "benefit," if any, defendant derived. This is particularly relevant in light of the dismissal of allegations of misappropriation of funds.

## IV.

**[4]** Defendant also asserts error in the DHC's imposition of disbarment, the most severe sanction available to the DHC. For the reasons that follow, we must agree.

N.C.G.S. § 84-28 authorizes the imposition of sanctions against an attorney who has engaged in misconduct, including violations of the Rules of Professional Conduct. Upon a finding of misconduct, the DHC has a choice of five possible sanctions. In order of increasing severity, the statutory definitions of these are as follows:

1. <u>Admonition</u>: An admonition is a written form of discipline imposed in cases in which an attorney has committed a minor violation of the Rules of Professional Conduct.

2. <u>Reprimand</u>: A reprimand is a written form of discipline more serious than an admonition issued in cases in which an attorney has violated one or more provisions of the Rules of Professional Conduct, but the protection of the public does not require a censure. A reprimand is generally reserved for cases in which the attorney's conduct has caused harm or potential harm to a client, the administration of justice, the profession, or members of the public.

3. <u>Public Censure</u>: A censure is a written form of discipline more serious than a reprimand issued in cases in which an attorney has violated one or more provisions of the Rules of Professional Conduct and has caused significant harm or potential significant harm to a client, the administration of justice, the profession, or members of the public, but the protection of the public does not require a suspension of the attorney's license.

4. <u>Suspension</u> for a period up to but not exceeding five years, any portion of which may be stayed upon reasonable conditions to which the offending attorney consents.

5. <u>Disbarment</u>.

N.C.G.S. § 84-28(c). The choice of which sanction is most appropriate rests in the discretion of the DHC and, accordingly, this Court will review the DHC's order of disbarment under an abuse of discretion standard. *See North Carolina State Bar v. Nelson*, 107 N.C. App. 543, 421 S.E.2d 163 (1992) (defendant alleges DHC abused its discretion in choice of sanction; Court holds that sanction may not be modified if within statutory range, and finds no abuse of discretion); *N.C. State Bar v. Graves*, 50 N.C. App. 450, 274 S.E.2d 396 (1981) (defendant argues sanction imposed was unreasonably harsh; this Court evaluates sanction in context of defendant's actions and the range of sanctions available to DHC, and concludes it was properly imposed).

Our analysis of whether the DHC's decision to disbar defendant was 'supported by reason' is undertaken against the backdrop of the stated policy underlying the State Bar's imposition of sanctions against an attorney. The Rules of Professional Conduct state that sanctions against an attorney are not "intended as punishment for wrongdoing," but are imposed "for the protection of the public, the courts, and the legal profession." 27 NCAC 1.0101. *See also N.C. State Bar v. Talman*, 62 N.C. App. 355, 303 S.E.2d 175 (1983). Therefore, a sanction imposed by the DHC should be reasonably related to the "protection of the public, the courts, and the legal profession," in view of the nature and gravity of a defendant's misconduct, and of the other evidence in the record.

This policy is further reflected in the statutory guidelines articulated in N.C.G.S. § 84-28(c) for the DHC's determination of the most appropriate sanction. These include (1) whether the attorney's acts or omissions have caused harm or potential harm to a client, the administration of justice, the profession, or members of the public, (2) whether the attorney's acts or omissions have caused <u>significant</u> harm or <u>significant</u> potential harm to a client, the administration of justice, the profession, or members of the public, and (3) the extent to which the attorney's acts and omissions demonstrate a need to protect the public.

The DHC's order does not reference these factors; its findings and conclusions do not address the degree of potential harm that defend-

ant's acts and omissions might cause, why disbarment would be necessary to protect the public, or how the defendant's failure to maintain accurate records might threaten the public, the legal profession, or the administration of justice. Thus, the order does not disclose whether the DHC's decision to disbar defendant was connected to any of these considerations.

The DHC's order made no findings that the defendant's actions threatened harm to the legal profession or to the administration of justice. Our own examination of the record discloses no evidence that defendant's acts and omissions operated as a threat to our legal system, or undermined the administration of justice. Defendant's violations of the Rules of Professional Conduct did not evince an intent to defraud the court, and did not affect proceedings in court; instead, his errors were confined to his bookkeeping and to his attorney/client relationships. *Compare with, e.g., Disciplinary Hearing Comm'n, N.C. State Bar v. Frazier,* 141 N.C. App. 514, 540 S.E.2d 758 (2000) (attorney pressured witness to recant truthful testimony); *In re Paul,* 84 N.C. App. 491, 353 S.E.2d 254 (1987) (attorney solicited another to disrupt trial); *N.C. State Bar v. Talman,* 62 N.C. App. 355, 303 S.E.2d 175 (1983) (attorney offered false testimony, and counseled clients in illegal conduct).

The DHC's order also contains no findings or conclusions that establish that any individual client was harmed. It may be argued that the defendant's failure to keep accurate records poses an inherent risk of harm to clients; however, the record does not reveal any actual harm to any client.

The other factor articulated in N.C.G.S. § 84-28(c) is the degree to which defendant's acts and omissions demonstrate a need to protect the public from the attorney. In this regard, we find it most significant that those charges originally brought by the State Bar that alleged dishonesty, fraud, tax evasion, misrepresentation, unfair business transaction, misappropriation of funds, and deceit, were dismissed at the end of the hearing. We conclude that the dismissal of all charges implicating intentional malfeasance and moral turpitude reduces the apparent extent to which the public needs protection from defendant.

Finally, although N.C.G.S. § 84-28 does not require a "proportionality review," fundamental fairness requires that the DHC not act with unbridled license, and that its decisions not be arbitrary. To this end,

we examine the factual context of other cases in which sanctions were imposed against an attorney. Such review suggests that disbarment historically has been reserved for situations in which an attorney is shown by clear, cogent, and convincing evidence to have engaged in conduct that is dishonest, immoral, or criminal. We find that the present case appears to be an anomaly. This defendant was disbarred for violation of the accounting requirements of the Rules of Professional Conduct, although none of his clients had lodged a complaint against him, or were shown to have suffered any harm.

The most frequent predicate for disbarment appears to be proof of embezzlement. *See, e.g.*, *In re Escoffery*, 216 N.C. 19, 3 S.E.2d 425 (1939); *In re Brittain*, 214 N.C. 95, 197 S.E. 705 (1938); *Boomer v. Caraway*, 116 N.C. App. 723, 449 S.E.2d 215 (1994); *GE Capital Mortgage Services v. Avent*, 114 N.C. App. 430, 442 S.E.2d 98 (1994); *N.C. State Bar v. Whitted*, 82 N.C. App. 531, 347 S.E.2d 60 (1986). Commission of other serious criminal offenses also has been the basis for disbarment. *See, e.g.*, *In re Delk*, 336 N.C. 543, 444 S.E.2d 198 (1994) (extortion and conspiracy to commit extortion); *N.C. State Bar v. Harris*, 137 N.C. App. 207, 527 S.E.2d 728 (2000) (attorney steals settlement check from client who had previously discharged him); *Vann v. N.C. State Bar*, 79 N.C. App. 166, 339 S.E.2d 95 (1986) (attorney receives prison terms after pleading guilty to eleven felony forgery charges); *State v. Singletary*, 75 N.C. App. 504, 331 S.E.2d 166 (1985) (conspiracy and fraudulent burning of uninhabited house); *State Bar v. Temple*, 2 N.C. App. 91, 162 S.E.2d 649 (1968) (attempting to traffic in counterfeit money, preparation of false affidavits, altering note and deed of trust).

The North Carolina State Bar also has disbarred attorneys who demonstrated an intention to perpetrate a fraud upon the court, subvert the trial process, or disrupt the court's functioning. *See Attorney General v. Gorson*, 209 N.C. 320, 183 S.E. 392 (1936) (failure to disclose to North Carolina State Bar that attorney had previously been disbarred in Pennsylvania for reasons of "moral turpitude"); *Disciplinary Hearing Comm'n, N.C. State Bar v. Frazier*, 141 N.C. App. 514, 540 S.E.2d 758 (2000) (misappropriation of client funds, advising client not to attend hearing, and pressuring witness to recant prior truthful testimony); *N.C. State Bar v. Maggiolo*, 124 N.C. App. 22, 475 S.E.2d 727 (1996) (counseled client to commit fraud, advised unrepresented party, and engaged in conduct involving dishonesty, fraud, and deceit); *In re Paul*, 84 N.C. App. 491, 353 S.E.2d 254 (1987) (soliciting another to disrupt trial with loud outburst); *N.C. State Bar*

*v. Talman*, 62 N.C. App. 355, 303 S.E.2d 175 (1983) (false testimony about having paid estate taxes; counseling clients in fraudulently obtaining stock certificates).

In sum, disbarment generally serves to protect "the public, the courts, and the legal profession" from an attorney's misconduct. *Talman id.* However, our review has revealed no reported cases wherein an attorney was disbarred for conduct akin to this defendant's: violation of regulations for trust account management, unaccompanied by proof of injury to specific persons, or of dishonesty, fraud, or criminal behavior.

Suspension from practice for a period of time, and public censure, are less serious sanctions than disbarment. Like disbarment, suspension frequently has been imposed in response to proof that an attorney has engaged in dishonest or criminal behavior. *See, e.g., N.C. State Bar v. Dumont*, 304 N.C. 627, 286 S.E.2d 89 (1982) (six month suspension for procuring false testimony by a witness); *N.C. State Bar v. Mulligan*, 101 N.C. App. 524, 400 S.E.2d 123 (1991) (three year suspension for embezzling funds from client); *N.C. State Bar v. Speckman*, 87 N.C. App. 116, 360 S.E.2d 129 (1987) (three year suspension for conversion of client's funds, failure to honor subpoena); *N.C. State Bar v. Wilson*, 74 N.C. App. 777, 330 S.E.2d 280 (1985) (one year suspension for knowing use of perjured evidence, misleading tribunal, preparation of false affidavit); *N.C. State Bar v. Braswell*, 67 N.C. App. 456, 313 S.E.2d 272 (1984) (ninety day suspension for attorney who failed to perfect appeal; made knowing misrepresentations to client and to State Bar); *State Bar v. Combs*, 44 N.C. App. 447, 261 S.E.2d 207 (1980) (three year suspension for fraudulent real estate transaction).

Suspension also has been imposed upon attorneys whose acts and omissions have caused a client to suffer harm. *See, e.g., In re Hunoval*, 294 N.C. 740, 247 S.E.2d 230 (1977) (twelve month suspension for refusal to file application for writ of certiorari for client on death row, on grounds that he did not expect to be paid for its preparation); *N.C. State Bar v. Barrett*, 132 N.C. App. 110, 511 S.E.2d 15 (1999) (two year suspension, stayed, where attorney commingled personal funds with rent monies received on behalf of client); *N.C. State Bar v. Sheffield*, 73 N.C. App. 349, 326 S.E.2d 320 (1985) (three year suspension for failure to keep trust account records, failure to withdraw from case that he was neglecting, failure to disburse settlement funds).

Public censure, the third most severe sanction, also has been employed to protect others from an attorney who has been dishonest, unprofessional, or who has injured a client. *See, e.g., In re Palmer*, 296 N.C. 638, 252 S.E.2d 784 (1979) (public censure for failure to withdraw from case in which attorney knows that client intends to offer perjured testimony); *N.C. State Bar v. Shuping*, 86 N.C. App. 496, 358 S.E.2d 534 (1987) (censure for failure to file required documents in connection with settlement of estate, and failure to respond to repeated official notices about estate deadlines); *State Bar v. Graves*, 50 N.C. App. 450, 274 S.E.2d 396 (1981) (public censure for suborning perjury).

Our examination of the reported cases involving discipline of an attorney for misconduct leads us to conclude that the sanction imposed in this case is an aberration. We find it significant that the charges implicating dishonesty were dismissed. We also note that none of defendant's clients had lodged a complaint, or were shown to have suffered any harm. Neither do the DHC's findings regarding aggravating and mitigating factors establish a readily apparent reason for disbarring defendant. In addition, we cannot discern the extent to which the DHC relied upon its finding of gross negligence in imposing the ultimate sanction against this defendant. However, assuming *arguendo* that defendant's conduct did rise to the level of gross negligence as found by DHC, our review shows that the lesser sanctions of suspension and public censure have been imposed for far more serious conduct than has been established in this case. Finally, the State Bar failed to establish that defendant has received any benefit from his actions.

The statutory framework for discipline of attorneys allows the DHC wide latitude in fashioning an appropriate and constructive sanction against an attorney who has engaged in misconduct. As factfinder, the DHC has discretion to consider demeanor, credibility, and other intangible factors in its decision to sanction an attorney, and in its choice of sanction. Thus, the DHC is not required to "match" particular offenses to specific sanctions. However, this discretion cannot be exercised arbitrarily. We conclude that the imposition of the sanction of disbarment, based on the record before us, is such a departure from DHC's application of disbarment in prior cases, that we are unable to conclude that it is based upon a reasoned decision as to the sanction imposed. The record does not demonstrate a rational basis for disbarment; nor is such rational basis evident in the DHC order. Accordingly, we conclude that the imposition of disbarment was, on

the facts of this case, an abuse of discretion. Of particular note is the detailed discussion in the transcript, by counsel for both the State Bar and the defendant, regarding sanctions other than disbarment that might be appropriate. The State Bar, because of its enormous power to control one's ability to practice law, which is a property right, has a responsibility to be fair and evenhanded in the exercise of this power and, equally important, to exhibit the appearance of even-handedness in its judgments.

The decision herein does not diminish the DHC's discretion. Nor does it do any damage to cases that have held that as long as the sanction is within the statutory parameters, this Court is without authority to enter a different sanction. We are not replacing disbarment with another sanction of our choosing, but are exercising our customary and established power to review discretionary rulings on appeal for abuse of discretion.

For the reasons discussed above, we hold that DHC's findings and conclusion that defendant violated Rule 1.15 of the Rules of Professional Conduct is supported by substantial evidence in the record; and we remand for the DHC to review the sanction imposed in light of the discussion herein, and for entry of a new order consistent with this opinion.

Affirmed in part, reversed and remanded in part.

Judges WYNN and CAMPBELL concur.